**Kevin DALE, Appellant,**

**v.**

**Maria J. Dale HARDY and Ronald J. Weller, D.O., Respondents.**

**No. WD 45190.**

Missouri Court of Appeals, Western District.

June 16, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 28, 1992.

Application to Transfer Denied Sept. 22, 1992.

---

Marion Wasinger, Hannibal, for appellant.

J.C. Hambrick Jr., Kansas City, for respondents.

Before BRECKENRIDGE, P.J., and SHANGLER and HANNA, JJ.

HANNA, Judge.

The issue the parties present us is whether the federal court had subject matter jurisdiction of a wrongful death action and what apportionment should be made to appellant, Kevin Dale, for the damages awarded for the death of his child. These unusual questions have found their way into this court by reason of these facts.

A daughter, Mikki, was born to Kevin and Maria Dale (present name, Maria Dale Hardy). After their divorce, custody of the child was given to the mother. Mikki visited with her father on occasion and following one of those visits developed a stomach disorder. Mrs. Hardy took Mikki to the Moberly Regional Center where she was examined by Dr. Weller. Dr. Weller determined Mikki was suffering from a simple temper tantrum and advised Mrs. Hardy to take Mikki home. Later, the child suffered severe convulsions, went into a coma, and died of methanol poisoning, which Mrs. Hardy alleged Mikki ingested while visiting her father.

In May of 1988, Maria J. Dale Hardy filed her complaint for the wrongful death of her daughter in the United States District Court for the Western District of Missouri, and named as defendants, her former husband, Kevin Dale, the treating physician, Ronald J. Weller, D.O., the Moberly Regional Medical Center, and Charles M. Edwards, M.D.

The federal lawsuit was transferred from the Western to the Eastern District of Missouri and the matter was assigned to United States Magistrate, Robert D. Kingslan, for a jury trial. The father then filed a motion to dismiss, pursuant to his defense of parental immunity, and the motion was sustained.

The lawsuit went to trial May 29, 1990. Dr. Edwards was directed out at the close of the plaintiff's case and the jury returned a verdict in favor of Mrs. Hardy against Dr. Weller in the amount of $250,000.00. Defendant Moberly was dismissed from the lawsuit. Judgment was entered by Magistrate Kingslan on June 1, 1990, in accordance with the verdict.

On or about November 13, 1990, Mrs. Hardy agreed with Dr. Weller to satisfy the judgment in exchange for payment of $255,000.00, plus court costs. Apparently this agreement was never consummated. Shortly thereafter, Mr. Dale filed a motion to intervene and requested an evidentiary hearing for the purposes of determining apportionment of the judgment. On January 31, 1991, the court denied Mr. Dale's request for intervention on the basis of untimeliness. (In that order the court attempted to clarify its earlier judgment by stating "IT IS FURTHER ORDERED that the judgment entered in favor of plaintiff Maria Dale is hereby apportioned solely to plaintiff Maria Dale.") Mr. Dale then filed additional motions requesting the earlier order be set aside and raised the issue of the court's jurisdiction. Those motions were denied June 25, 1991, and that ruling of the federal court magistrate was appealed to the United States Court of Appeals for the 8th Circuit.[1]

On March 5, 1991, Mr. Dale filed this lawsuit in the state court against Mrs. Hardy and Dr. Weller. The petition is in three counts. We are concerned only with the first two counts against Mrs. Hardy, the last one being Mr. Dale's wrongful death action against Dr. Weller for the death of Mikki. Dr. Weller was never served in the present action.[2]

In his first count Mr. Dale generally attacks the federal court judgment and specifically claims it is void for lack of subject matter jurisdiction. He claims that only a Missouri circuit court has authority to apportion and approve wrongful death claims brought under § 537.095 RSMo (1986). His prayer is for relief from the judgment and the orders of the U.S. District Court and that those orders be given "no force and effect." The second count prays the state circuit court approve the settlement between Mrs. Hardy and Dr. Weller and to apportion that settlement between himself and Mrs. Hardy. Mrs. Hardy filed a motion to dismiss the state court petition, and following argument, the motion was sustained. The court dismissed plaintiff Dale's cause of action against Mrs. Hardy with prejudice and Mr. Dale appeals that decision.

In essence, Mr. Dale's first point asks this court to rule the jurisdiction of the federal court and to either set it aside, amend it, or ignore it. He argues the federal court did not have subject matter jurisdiction because diversity of citizenship was not pleaded, nor did it exist.

On February 11, 1992, while this appeal was pending, the United States Court of Appeals for the 8th Circuit, decided *Dale v. Weller*, 956 F.2d 813 (8th Cir.1992). Mr. Dale's primary complaint on appeal to the 8th Circuit was that the lower court did not have subject matter jurisdiction by virtue of a lack of diversity of citizenship. The 8th Circuit decided it could not determine from the limited record whether diversity jurisdiction existed and remanded the case, stating;

"On remand, the district court must determine whether Mrs. Dale, in the interest of justice, should be allowed to amend her complaint under Fed.R.Civ.P. 15(a) and/or whether diversity jurisdiction exists." *Id.* at 815

Recognizing that leave to amend should be liberally granted, and assuming the plaintiff is allowed to amend her complaint, the district court was directed to determine whether the plaintiff was a "citizen" of Kansas and whether complete diversity existed based on the citizenship of the other parties. Further, if the District Court de-

---

1. Mrs. Hardy and Dr. Weller entered a settlement agreement for $257,000.00 on or about February 14, 1991. Apparently the judgment was satisfied pursuant to that agreement.

2. Some three months after Mr. Dale filed his Notice of Appeal in this action, he voluntarily dismissed his wrongful death action against Dr. Weller.

cided jurisdiction did exist with the federal court, then the court was instructed to address Mr. Dale's claim for apportionment of the funds.

■ There is no authority for us to rule the federal court's jurisdiction. The decision of a federal court with respect to its jurisdiction is exclusive, and is as conclusive as its decision on any other matter submitted for its determination. *See St. Louis v. United Ry. Co.*, 263 Mo. 387, 174 S.W. 78, 85–87 (1914). The 8th Circuit opinion addresses all problems that are raised here and that are necessary for a complete resolution of the controversy concerning the federal court's jurisdiction. Once the matter of jurisdiction is finally resolved in the federal system, we are bound by that decision, because the principles of res judicata apply to questions of jurisdiction as well as to other issues. *Shay v. New York Life Ins. Co.*, 354 Mo. 920, 192 S.W.2d 421, 427 (1946).

■ "It is fundamental law that where two tribunals have concurrent jurisdiction that jurisdiction first invoked has exclusive jurisdiction to the end of the litigation." *In re Franz Estate*, 346 Mo. 1149, 145 S.W.2d 400, 403 (1940); *see also Younghaus v. Lakey*, 559 S.W.2d 30 (Mo.App. 1977). Not only was the wrongful death claim first filed in the federal court, but it had proceeded to judgment and was on appeal when Mr. Dale instituted the state court action. If it is determined that the federal court had proper jurisdiction to hear the matter, the state court is precluded from taking jurisdiction over the controversy. *See State ex rel Bowling Green Trust Co. v. Barnett*, 245 Mo. 99, 149 S.W. 311, 317 (1912). We decline to set aside, amend or ignore the federal court proceedings and/or judgment.

In Mr. Dale's second point, he claims the trial court erred by dismissing the plaintiff's cause of action against Mrs. Hardy with prejudice. Since we have concluded that Mr. Dale's cause of action challenging the jurisdiction of the federal court should not have been filed in the state court, this point is also without merit and denied. *See United Ry. Co.*, 174 S.W. at 85–87.

■ Finally, respondent has requested we assess damages against Mr. Dale for instituting a frivolous appeal, pursuant to Rule 84.19. Respondent requests this relief in a section of her brief denominated Point "X." The preferred procedure for raising the issue of a frivolous appeal is by separate motion. *See Roberts v. Roberts*, 810 S.W.2d 65, 67 (Mo.App.1990). However, Rule 84.19 grants us the authority to address the issue, regardless of the manner it is raised. *Id.*

■ Rule 84.19 allows us to award the respondent damages if we determine that an appeal is frivolous. A frivolous appeal is one presenting no justiciable question and so readily recognizable as devoid of merit on the face of the record that there is little prospect of success. *Community Bank of Chillicothe v. Campbell*, 813 S.W.2d 40, 45 (Mo.App.1991). Under these facts the request is reasonable. The requests the appellant makes of this court, to wit, to ignore or set aside the judgment of the federal court, flies in the face of a principle of law so basic and well established that an attempt to deny or change it is frivolous. Appellant's position in this court is exacerbated in light of the fact that he had appealed the very same issues to the 8th Circuit. While he correctly identifies the legal issues, it is fundamental that his claim of the lack of the federal court's jurisdiction should have been made in the court claiming jurisdiction. This appeal was filed without a careful review of the merits. Respondent's request for sanctions is sustained.

The rule has as its purpose to compensate respondents for expenses of the appeal, as well as to protect the appellate dockets from delay in the resolution of cases with fairly debatable issues. In determining a figure for damages we are impressed by the high expenses of litigation today and that fact becomes our primary consideration. The most obvious damage in these matters is the attorney's fees incurred defending the frivolous appeal. However, respondent has not provided us with any foundation for assessment

of attorney fees by setting forth the time expended or, for that matter, any other damages. Therefore, we assess damages at $500.00, a figure comfortably within the range of loss sustained by the respondent for attorney fees.

The dismissal of plaintiff's cause of action by the trial court is affirmed and the case is remanded to the circuit court with directions to enter an order in favor of respondent and against the appellant for damages in the amount of $500.00. Costs of the appeal are also assessed against appellant.

All Concur.