Melba **WILKES** and Rodney Butler, for the death of Rhoneshia Butler and Rhonda Butler, Plaintiffs/Respondents,

v.

**ST. PAUL FIRE AND MARINE, INSURANCE COMPANY,** Defendant/Appellant.

No. ED 79940.

Missouri Court of Appeals, Eastern District, Division Four.

Oct. 1, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 18, 2002.

Application for Transfer Denied Jan. 28, 2003.

---

Robert Henry Pedroli, Eric Ruttencutter, Pedroli & Gauthier Law Firm, St. Louis, MO, for Respondents.

Thomas Michael Ward, Russell S. Watters, Brown & James, P.C. Law Firm, St. Louis, MO, for Appellant.

Gordon Edward Freese, St. Louis, MO, for Defendant.

SHERRI B. SULLIVAN, P.J.

### Introduction

St. Paul Fire and Marine Insurance Company (Insurer) appeals the summary judgment entered in favor of Melba Wilkes (Wilkes) and Rodney Butler (Butler) (collectively Plaintiffs) on their claim for equitable garnishment of a homeowner's insurance policy issued to Derrick Warren (Warren) by Insurer. We affirm.

### Factual and Procedural Background

In 1991, Warren and Wilkes began a personal relationship. When they met, Wilkes already had two children, Rhonda and Rhoneshia Butler (collectively Decedents), who were then approximately fifteen months old and six months old, respectively. Butler was Decedents' father. By 1993, Warren and Wilkes had two children of their own.

Prior to 1996, Wilkes (with her four children) and Warren lived in separate residences. In 1996, Warren bought a house. Shortly thereafter, Warren, Wilkes, and the four children moved into this house. In March 1996, Warren obtained a homeowner's insurance policy for the house from Insurer. Warren is the only "named insured" on the policy.

On November 27, 1997, all four children were left in the home with Wilkes's uncle while Warren and Wilkes went out. A fire broke out, tragically killing all four children.

The homeowner's insurance policy was in effect on the date of the fire. Under the "household exclusion," the policy excludes personal liability coverage for bodily injury to any insured under the policy, including residents of the named insured's household who are under the age of twenty-one and in the care of the named insured.

In May 1998, Wilkes filed a wrongful death lawsuit against Warren in the Circuit Court of St. Louis County. Butler joined in this lawsuit in August 1999. Plaintiffs claimed that Decedents' deaths were caused by Warren's negligence in leaving the stove on before leaving the house with Wilkes. Warren sought defense and indemnity under his homeowner's insurance policy. Insurer defended Warren under a reservation of rights.

In December 1998, Insurer filed a declaratory judgment action against Warren in the United States District Court for the Eastern District of Missouri. Insurer asserted that the household exclusion in Warren's policy barred coverage for Decedents' deaths because they were "insureds" under the policy as residents of Warren's household who were under the age of twenty-one and in the care of Warren.

In March 1999, Warren terminated the attorney Insurer retained for his defense and hired his own counsel. Later in March, Warren and Wilkes entered into an Agreement pursuant to Section 537.065.[1] Under the Agreement, Warren admitted liability for Decedents' deaths and Wilkes agreed to limit any recovery on the wrongful death lawsuit to the proceeds of Warren's homeowner's insurance policy.

In May 1999, one of Insurer's attorneys contacted Wilkes's counsel to discuss the declaratory judgment action pending in federal court. Insurer's attorney informed Wilkes's counsel that Insurer would not object if Wilkes sought to intervene in the action. Wilkes's counsel indicated that he had no intention of intervening in the action. Although Insurer could have joined Wilkes as a party in the federal action under Federal Rule of Civil Procedure (FRCP) 19, Insurer chose not to do so.

In August 1999, the trial court held a hearing on damages and fault in Plaintiffs' wrongful death lawsuit. Warren waived his right to a jury trial and to cross-examine witnesses. The trial court found that Warren was at fault for Decedents' deaths. The trial court entered a judgment in Plaintiffs' favor and against Warren in the amount of $300,000 for each of Decedents' deaths.

Later in August 1999, Insurer and Warren filed cross-motions for summary judgment in the declaratory judgment action pending in federal court. In November 1999, the district court granted Insurer's motion, holding that Decedents were "insureds" within the meaning of the household exclusion in Warren's homeowner's insurance policy. Accordingly, the district court held that the policy provided no coverage to Warren for Plaintiffs' wrongful death judgment.

In April 2000, pursuant to Section 379.200, Plaintiffs filed the underlying equitable garnishment action against Insurer and Warren. Plaintiffs sought to satisfy the wrongful death judgment against Warren from the proceeds of his homeowner's insurance policy. Insurer moved for summary judgment based on the federal declaratory judgment entered in November 1999. Insurer argued that Plaintiffs' claims were barred by res judicata and collateral estoppel because Plaintiffs' rights were derivative of Warren's under the policy, and the district court had held that the household exclusion barred coverage. Plaintiffs filed a cross-motion for summary judgment, arguing that collateral estoppel did not apply because they were not parties to the federal action and were not in privity with Warren. Plaintiffs further claimed that coverage existed under the policy to satisfy their wrongful death judgment against Warren.

In July 2001, the trial court denied Insurer's motion and granted Plaintiffs' motion. The court entered summary judgment in favor of Plaintiffs and against Insurer in the amount of $300,000, the per occurrence limit of coverage under Warren's homeowner's insurance policy. Insurer appeals from this summary judgment.

---

1. All statutory references are to RSMo. (2000), unless otherwise indicated.

## Standard of Review

This Court reviews summary judgment essentially *de novo* because the propriety of summary judgment is purely an issue of law. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record is reviewed in the light most favorable to the party against whom judgment was entered, and that party is given the benefit of all reasonable inferences from the record. *Id.* Evidence presented in support of the motion is taken as true unless contradicted by the non-moving party's response to the motion. *Id.* The moving party bears the burden of proving that it is entitled to judgment as a matter of law and that no genuine issues of material fact exist. *Id.* at 382. A genuine issue exists where the record contains competent materials which evidence two plausible, but contradictory, accounts of essential facts. *Id.* A genuine issue is not an argumentative, imaginary, or frivolous dispute. *Id.*

Claimants, such as Plaintiffs, must establish that there is no genuine dispute as to those material facts upon which they would have had the burden of persuasion at trial. *Id.* at 381. Additionally, where the defendant has raised an affirmative defense, a claimant's right to judgment depends as much on the non-viability of that affirmative defense as it does on the viability of the claimant's claim. *Id.* A claimant moving for summary judgment in the face of an affirmative defense must also establish that the affirmative defense fails as a matter of law. *Id.* The claimant may defeat an affirmative defense by establishing that any one of the facts necessary to support the defense is absent. *Id.*

## Discussion

■ In its point on appeal, Insurer argues that the trial court erred in entering summary judgment in favor of Plaintiffs on the existence of coverage under Warren's homeowner's insurance policy because the doctrine of collateral estoppel bars Plaintiffs' claim. Insurer maintains that the federal declaratory judgment precludes Plaintiffs' claim in the equitable garnishment action.

[2–4] Collateral estoppel, or issue preclusion, precludes the same parties, or those in privity with the parties, from relitigating issues that have been previously litigated. *Major v. Frontenac Industries, Inc.*, 968 S.W.2d 758, 761 (Mo.App. E.D. 1998). In deciding whether the application of collateral estoppel is proper, we consider the following four factors: (1) whether the issue in the present case is identical to the issue decided in the prior adjudication; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party, or was in privity with a party, to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior adjudication. *Cox v. Steck*, 992 S.W.2d 221, 224 (Mo.App. E.D.1999). Collateral estoppel will not be applied where to do so would be inequitable. *James v. Paul*, 49 S.W.3d 678, 683 (Mo. banc 2001). Fairness is the overriding consideration. *Cox*, 992 S.W.2d at 224. Each case must be analyzed on its own facts. *James*, 49 S.W.3d at 683.

The first consideration factor for the application of collateral estoppel is whether the issue in the present case is identical to the issue decided in the prior adjudication. Plaintiffs concede that this factor weighs in favor of the application of collateral estoppel.

■ The second consideration factor for the application of collateral estoppel is whether the prior adjudication resulted in

a judgment on the merits. A judgment on the merits is one rendered when it is determined which party is in the right after argument and investigation, as distinguished from a judgment rendered upon some preliminary or technical point, or by default, and without trial. *Hayes v. United Fire & Cas. Co.*, 3 S.W.3d 853, 856 (Mo.App. E.D.1999). Where there is a question of whether a previous decision went to the merits of the case, no preclusive effect is given to the earlier decision. *Id.* The district court attached a twelve-page memorandum to its Order entering judgment for Insurer and against Warren on the merits of Insurer's complaint for declaratory judgment. The memorandum reflects consideration of the parties' arguments regarding the coverage issue and the district court's reasoning for its resolution of the issue. We find that this factor weighs in favor of the application of collateral estoppel.

■ The third consideration factor for the application of collateral estoppel is whether the party against whom collateral estoppel is asserted was a party, or was in privity with a party, to the prior adjudication. For collateral estoppel purposes, parties are in privity when the interests of the nonparty are so closely related to the interests of the party that the nonparty can be fairly considered to have had his or her day in court. *Cox*, 992 S.W.2d at 224. Privity is not established simply because the parties are interested in the same question or in proving or disproving the same state of facts. *Id.*

Plaintiffs were not parties to the declaratory judgment action. Insurer and Warren were the only parties. Insurer argues that Plaintiffs were in privity with Warren. Insurer cites *James* to support its argument. As part of a privity analysis in *James*, the Court stated that a "judgment creditor stands in the shoes of the insured

and has rights no greater and no less than the insured's rights would have been if the insured paid the judgment and then sought reimbursement from the insurer." *Id.* at 683. The Court then concluded that the judgment creditor, whose claim was derivative of the insured's contractual rights, was in privity with the insured. *Id.* at 684.

Although the language in *James* suggests that privity would exist here, *James* is premised on very different facts. For example, in *James*, the insurer sought to apply collateral estoppel in a garnishment action based upon the insured's plea of guilty in a prior criminal case. The insured pleaded guilty to first-degree assault, establishing that his actions were intentional. The insured's homeowner's insurance policy excluded coverage for intentional acts. The criminal conviction foreclosed the insured and any party claiming through him from asserting that his conduct was not intentional. *Id.* at 689.

In comparison, Insurer seeks the application of collateral estoppel based upon a declaratory judgment finding no coverage under Warren's homeowner's insurance policy. However, Warren never admitted that Decedents were "in his care," which would have excluded coverage under the household exclusion in the policy and upon which the district court's finding was based.

Additionally, in *James*, the insured made an agreement with the third party that if the third party was unsuccessful in the garnishment action against the insurer, the insured would pay the third party an additional sum of money. *Id.* at 681. In comparison, Warren faced no additional obligation to Wilkes under the Agreement if she were unsuccessful in the equitable garnishment action against Insurer.

Insurer also cites *State Farm Mut. Auto. Ins. Co. v. Allen*, 744 S.W.2d 782

(Mo. banc 1988), to support its privity argument. However, *Allen* is distinguishable from the present case. In *Allen*, the insurer brought a declaratory judgment action against all known claimants. *Id.* at 786. The issue of privity arose in relation to the admission of evidence. *Id.* In fact, the Court stated:

> It is prudent for the insurer to include all claimants in its suit, because the insured may not pursue his rights diligently, and the claimants have every right to labor in support of his coverage.

*Id.*

Even if the language in *James* constrains us to find that Plaintiffs were in privity with Warren and thus that the third factor weighs in favor of the application of collateral estoppel, we nonetheless conclude that the equitable considerations under the fourth factor weigh strongly against the application of collateral estoppel.

■■■ The fourth consideration factor for the application of collateral estoppel is whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior adjudication. In deciding this factor, we consider the following additional four factors: (1) did the party against whom collateral estoppel is asserted have a strong incentive to litigate the prior adjudication; (2) does the second forum afford the party against whom collateral estoppel is asserted procedural opportunities not available in the first action; (3) is the prior judgment, upon which collateral estoppel is based, inconsistent with one or more prior judgments; and (4) was the forum in the first action substantially inconvenient to the party against whom collateral estoppel

is asserted. *St. Louis Univ. v. Hesselberg Drug Co.*, 35 S.W.3d 451, 455–456 (Mo. App. E.D.2000).

Plaintiffs were not parties to the federal declaratory judgment action. Even if they were in privity with Warren, Warren did not have as strong an incentive to litigate the prior adjudication as would have Plaintiffs. Although the Agreement between Wilkes and Warren required Warren "to do such further acts consistence (sic) with the intent and purpose of this Agreement," the Agreement protects Warren from personal liability for any judgment Wilkes obtained against Warren. The Agreement limits any recovery to insurance proceeds. Thus, whereas a finding of no coverage under Warren's policy would not significantly impact Warren, such a finding would significantly impact Plaintiffs because they would receive no compensation. We find it difficult to expect that Warren could adequately represent the interests of Plaintiffs under such an arrangement. The outcome of the declaratory judgment action had no practical effect on Warren, yet it had every practical effect on Plaintiffs. Thus, because any recovery by Plaintiffs would be limited to insurance proceeds, they had a greater incentive than Warren to litigate the coverage issue. Plaintiffs have the right to an opportunity to diligently pursue coverage.

Additionally, although Wilkes may have had an opportunity to participate in the declaratory judgment action by intervening under FRCP 24, she chose not to participate in that forum.[2] In fact, Insurer waited until beyond the date allowed for permissive intervention to notify Wilkes's counsel. It nonetheless remains that Insurer did not attempt to join Plaintiffs in the action under FRCP 19, although In-

---

2. We emphasize that the litigation between the parties began in state court with the filing of the wrongful death lawsuit, and Insurer chose to utilize a federal forum for the declaratory judgment action.

surer obviously was aware of Plaintiffs' interest in the action. We find guidance in the following:

> Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree. The parties to a lawsuit presumably know better than anyone else the nature and scope of relief sought in the action, and at whose expense such relief might be granted. It makes sense, therefore, to place on them a burden of bringing in additional parties where such a step is indicated, rather than placing on potential additional parties a duty to intervene when they acquire knowledge of the lawsuit. The linchpin of the 'impermissible collateral attack' doctrine—the attribution of preclusive effect to a failure to intervene—is therefore quite inconsistent with Rule 19 and Rule 24.

*Martin v. Wilks*, 490 U.S. 755, 765, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989). Accordingly, we find that the fourth factor weighs strongly against the application of collateral estoppel.

Under the facts of this case, fairness requires us to conclude that the application of collateral estoppel is not proper. Accordingly, the trial court did not err in finding that the federal declaratory judgment does not preclude Plaintiffs' claim in the equitable garnishment action. Insurer's point on appeal is denied.

## Conclusion

The trial court found the existence of coverage under Warren's homeowner's insurance policy and Insurer does not allege error in this finding. Accordingly, the summary judgment entered in favor of Plaintiffs and against Insurer is affirmed.

LAWRENCE E. MOONEY, J., concurs.

LAWRENCE G. CRAHAN, J., dissents in a separate opinion.

LAWRENCE G. CRAHAN, Judge, dissenting.

I respectfully dissent. It is undisputed that there has been a prior adjudication on the merits that Derrick Warren ("Insured"), the policyowner, has no coverage for the claims asserted against him by Melba Wilkes and Rodney Butler ("Plaintiffs"). Inasmuch as Plaintiffs' rights to recover on the policy are wholly derivitive of Insured's, they likewise must be barred from recovery under the policy. To hold otherwise is to hold that a third party beneficiary of an insurance policy can nonetheless collect even when it is undisputed that the policyholder could not collect if he paid the full amount of the judgment and sought reimbursement.

The relevant facts are essentially undisputed. In 1991, Insured and Ms. Wilkes began a significant personal relationship. When they met, Ms. Wilkes already had two children, Rhonda and Rhoneshia Butler, who were then approximately fifteen months old and six months old respectively. By 1993, Ms. Wilkes and Insured had two children together, Derrick and Dericka.

Prior to 1996, Ms. Wilkes (with her four children) and Insured lived in separate residences. In 1996, Insured bought a house in St. Louis County. Shortly thereafter, Insured, Ms. Wilkes and all four children moved into this residence. In March 1996, Insured obtained a homeowner's insurance policy for the residence from Insurer. Derrick Warren was the only "named insured" on the policy.

On November 27, 1997, all four children were left in the home with Ms. Wilkes' uncle while Insured and Ms. Wilkes were

out. A fire broke out, tragically killing all four children.

It is undisputed that the homeowner's policy originally procured by Insured in March 1996 was in effect on the date of the fire. The policy provides in the section entitled Definitions that "in this policy, 'you' and 'your' refer to the 'named insured' shown in the Declarations and the spouse if a resident of the same household. 'We', 'us' and 'our' refer to the Company providing this insurance." In addition, certain words and phrases are defined as follows:

2. **Bodily Injury** means bodily harm, sickness or disease including required care, loss of services and death that results.

4. **Insured** means you and the residents of your household who are:

    **a.** your relatives; or

    **b.** other persons under the age of 21 and in the care of any person named above.

With respect to liability coverage, the policy provided, in pertinent part:

**Coverage E—Personal Liability**

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which an **insured** is legally liable . . .

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay or tender for damages resulting from

the occurrence equals our limits of liability.

The policy also contained the following exclusions:

2. **Coverage E—Personal Liability,** does not apply to:

    f. bodily injury to you or any **insured** within the meaning of part a. or b. of **insured** as defined.

In May 1998, Ms. Wilkes filed a wrongful death lawsuit against Insured for the deaths of Rhoneshia and Rhonda Butler in the Circuit Court of St. Louis County. Rodney Butler later joined in this lawsuit. Plaintiffs claimed that the deaths of the two children were caused by Insured's negligence when he left the stove on when leaving the house with her. Insured sought defense and indemnity under his homeowner's insurance policy from Insurer. Insurer defended Insured under a reservation of rights.

In December 1998, Insurer filed a declaratory judgment action against Insured in the United States District Court for the Eastern District of Missouri. Insurer asserted that the household exclusion in Insured's policy barred coverage for Rhoneshia and Rhonda's deaths because they were "insureds" under the policy. Specifically, Insurer asserted that Rhoneshia and Rhonda were residents of Insured's household who were under the age of twenty-one and in the care of Insured.

While the declaratory judgment suit was pending, in March 1999, Insured terminated the attorney retained by Insurer and proceeded with his own counsel. He then entered into an agreement with Plaintiffs pursuant to Section 537.065 RSMo 2000.[1] Under the agreement, Insured admitted liability for the deaths of Plaintiffs' children. In exchange, Plaintiffs agreed to limit any recovery on their wrongful death

---

1. Unless otherwise indicated, all statutory ref-    erences are to RSMo 2000.

claim to the proceeds of Insured's homeowner's policy issued by Insurer.

In May 1999, one of Insurer's counsel contacted Plaintiffs' counsel to discuss the declaratory judgment action pending in federal court. Insurer's counsel informed Plaintiffs' counsel that Insurer would not object if Ms. Wilkes sought to intervene in the declaratory judgment action. Plaintiffs' counsel indicated he had no intention of intervening in the declaratory judgment action pending in federal court.

On August 2, 1999, the Circuit Court of St. Louis County held a hearing on damages and fault in Plaintiffs' wrongful death lawsuit. Insured waived his right to a jury trial and to cross-examine witnesses. The court found that Insured was at fault for the children's deaths. Judgment was entered in Plaintiffs' favor and against Insured in the sum of $300,000 for Rhonda's death and $300,000 for Rhoneshia's death.

Later in August 1999, Insurer and Insured filed cross motions for summary judgment in the declaratory judgment action pending in federal court. In November 1999, the District Court[2] granted Insurer's motion, holding that the children were "insureds" within the meaning of the household exclusion clause set forth in the policy. Following the analysis set forth in *American Family Mutual Ins. Co. v. Wemhoff*, 972 S.W.2d 402, 404–05 (Mo.App. 1998), the District Court held that the phrase "in the care of" as it pertained to Insured's relationship with Rhonda and Rhoneshia was not ambiguous. The District Court noted that the children had lived with Insured for over a year. He had provided them with health insurance, listed them as beneficiaries on his life insurance, supervised their activities as necessary, disciplined them, and otherwise presented himself as a father figure. Under such circumstances, the District Court held that the children were in the care of Insured at the time of the fire and the household exclusion was therefore applicable. Accordingly, the District Court held that the homeowner's policy issued by Insurer provided no coverage to Insured for the wrongful death claims brought by Plaintiffs.

In April 2000, Plaintiffs filed the underlying equitable garnishment action pursuant to Section 379.200[3] against Insurer and Insured in the Circuit Court for the City of St. Louis. Plaintiffs sought to satisfy the judgment against Insured from the proceeds of the homeowner's policy. Insurer moved for summary judgment based on the judgment entered in the District Court in November 1999. Insurer argued that Plaintiffs' claims were barred by *res judicata* and collateral estoppel because Plaintiffs' rights were derivative of Insured's under the policy and the District Court had held that the household exclusion barred coverage. Plaintiffs filed a cross-motion for summary judgment, claiming that collateral estoppel did not apply because they were not parties to the federal action and were not in privity with Insured. They further claimed there was coverage under the policy to satisfy their judgment against Insured.

The trial court denied Insurer's motion and granted Plaintiffs' motion. The court entered judgment in Plaintiffs' favor and against Insurer in the sum of $300,000, which was the per occurrence limit of cov-

2. The Honorable Stephen N. Limbaugh, Sr., Senior United States District Judge.

3. Section 379.200 permits a judgment creditor to proceed in equity against the defendant and the insurance company to reach and apply insurance money to the satisfaction of the judgment.

erage under the policy. Insurer now appeals.

In its sole point for review, Insurer argues that the trial court erred in granting summary judgment to Plaintiffs on the existence of insurance coverage under the homeowner's policy because the doctrine of collateral estoppel bars Plaintiffs' claim. Insurer claims that the declaratory judgment in the District Court was on the merits and that the coverage issues decided in the federal action were identical to the coverage issues in Plaintiffs' equitable garnishment action. Insurer also argues that privity exists between Plaintiffs and Insured, and that Plaintiffs had a full and fair opportunity to litigate the coverage issues in the federal action.

Collateral estoppel is defined as issue preclusion and it precludes the same parties or their privies from relitigating issues that have been previously litigated. *Hangley v. American Family*, 872 S.W.2d 544, 547 (Mo.App.1994). In deciding whether to apply the doctrine of collateral estoppel, we must consider: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *Hayes v. United Fire & Casualty Co.*, 3 S.W.3d 853, 856 (Mo.App.1999).

Plaintiffs concede that the issue decided in the federal court is identical to the issue in the present case. The second issue is whether the prior adjudication resulted in a judgment on the merits. This court has defined a judgment on the merits as "one rendered after argument and investigation and when it is determined which party is in the right, as distinguished from a judgment rendered upon some preliminary or technical point, or by default, and without trial." *Laususe v. Normandy Osteopathic Hosp.*, 918 S.W.2d 953, 956 (Mo.App.1996). Plaintiffs initially concede that for purposes of the *Laususe* standard, the judgment was on the merits. However, Plaintiffs then argue that the federal judgment was not on the merits to the extent that all interested parties were not joined in the case. Plaintiffs claim that the judgment was without any effect upon their rights because Insurer failed to join them in the action, as required by Federal Rule of Civil Procedure 57. Therefore, Plaintiffs assert that the federal judgment was little more than an advisory opinion between Insurer and Insured. We disagree.

Plaintiffs rely on the advisory committee notes to Rule 57 which state that "all parties having an interest therein or adversely affected must be made parties or be cited." However, the Eighth Circuit has held:

> Nevertheless, the Federal Declaratory Judgment Act contains no express requirement that all interested parties must be joined, and we think there is no language in the act from which such a requirement could be implied.... If Congress intended that a declaratory judgment should only be entered in a case after all interested parties had been joined, it is fair to assume that it would have inserted in the act a provision to that effect. Not having done so, this court does not feel justified in imposing any such condition upon the maintenance of this statutory proceeding.

*Western Casualty & Surety Co. v. Beverforden*, 93 F.2d 166, 168 (8th Cir.1937). *See also Alpers Jobbing Co. Inc. v. Northland Casualty Co.*, 173 F.R.D. 517, 519 (E.D.Mo.1997) (If a person is not a party

to the contract in litigation and has no rights or obligations under that contract, he will not be regarded as an indispensable party in a suit to determine obligations under the disputed contract, even though he may have obligated himself to abide by the result of the pending action by another contract that is not at issue).

Plaintiffs cite *Automobile Club Inter– Ins. Ex. v. Nygren*, 975 S.W.2d 235 (Mo. App.1998), for the proposition that when an indispensable party to a declaratory judgment is not joined in the case, any judgment rendered in that party's absence is a nullity. *Nygren* is distinguishable for two reasons. First, it involved a declaratory judgment in Missouri, not federal court. Second, the court reversed the judgment because the insurer, which issued the policy that was the subject of the trial court's coverage declarations, was not a party to the lawsuit. In the federal action, all parties to the policy were before the court.

Moreover, in the instant case, Insured specifically raised the issue of whether Ms. Wilkes was a necessary party to the declaratory judgment action in the District Court. The District Court held that Ms. Wilkes was not a necessary party because her interests were identical to and fully represented by Insured. In their brief, Plaintiffs advance various arguments why this finding was error, urging that the District Court lacked jurisdiction to proceed despite its express finding to the contrary. However, neither this court nor the trial court has any authority to rule on the federal court's jurisdiction and the federal court's decision with respect to its jurisdiction, and any other matter submitted for its determination, is exclusive and conclusive. *Craig v. Missouri Department of Health*, 80 S.W.3d 457, 460 (Mo. banc

2002) (citing *Dale v. Hardy*, 835 S.W.2d 444, 447 (Mo.App.1992)).

Plaintiffs nevertheless urge that Insured could not adequately represent their interests because he was shielded from liability by his section 537.065 agreement with Plaintiffs. However, the agreement clearly provided that Warren "do such further acts consistent with the intent and purpose of this Agreement." The intent and purpose of the agreement was that Warren admit liability and Plaintiffs would limit their recovery to his policy with Defendant. Therefore, Warren had in effect contracted to adequately represent Plaintiffs.[4] The record reflects that he hired counsel and fully litigated the coverage issue in federal court. Plaintiffs have not identified any evidence or legal arguments Insured failed to advance in the District Court and specifically declined the opportunity to intervene and advance any additional arguments they wanted considered. The District Court judgment was a judgment on the merits.

The third issue is whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication. Plaintiffs argue that whether there is privity is irrelevant because there is no privity analysis with declaratory judgments. Plaintiffs cite no authority for this proposition. The Missouri Supreme Court has held that a judgment creditor seeking to garnish the proceeds of a homeowner's insurance policy is, as a matter of law, in privity with the insured. *James v. Paul*, 49 S.W.3d 678, 683–84 (Mo. banc 2001). This is because the judgment creditor is a third party beneficiary of the contract between the insurer and the insured. *Id.* at 683. The judgment creditor stands in the shoes of

---

**4.** Insured also maintained a close relationship with Ms. Wilkes, with whom he had an additional child during the pendency of this litigation.

the insured and has rights no greater and no less than the insured's rights would have been if the insured paid the judgment and then sought reimbursement. *Id.* Plaintiffs are clearly in privity with Insured.

The fourth and final issue is whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. Again, *James* is instructive. *James* held:

> The "full and fair opportunity to litigate the issue in the first suit" is not a second layer of privity analysis under which only those in privity who had actual notice and an opportunity to intervene may be bound by a prior adjudication. Rather, it is a shorthand description of the analysis required to determine if non-mutual collateral estoppel should be applied.

49 S.W.3d at 684. In determining whether collateral estoppel will apply, we must consider whether the doctrine is being applied offensively or defensively. *Id.* at 685. Defensive collateral estoppel involves a defendant who invokes the doctrine to prevent a plaintiff from relitigating a fact decided against it in an earlier litigation that is necessary for the plaintiff to establish and carry his or her burden of proof. *Id.* That is exactly the case here. Defendant is invoking the doctrine to prevent Plaintiffs from recovering under Warren's policy after it was already determined in federal court that Warren did not have coverage. Had the District Court's judgment been in favor of Insured, Plaintiffs would clearly have been entitled to establish the existence of coverage by collateral estoppel. They should not be allowed to sit on the sidelines and take advantage of a judgment establishing coverage but ignore one that precludes coverage. Finally, failure to apply the doctrine of collateral estoppel would afford Plaintiff rights greater than

Insured would have if he paid the judgment and sought reimbursement, a result the Missouri Supreme Court characterized in *James* as "irrational." Plaintiffs had a full and fair opportunity to litigate the issue in the prior suit.

The trial court erred in holding that Plaintiffs negated Insurer's defense of collateral estoppel. Accordingly, the summary judgment entered in favor of Plaintiffs should be reversed.