ST. CHARLES COUNTY, Missouri, Respondent,

v.

"A JOINT BOARD OR COMMISSION" and North East Community Action Corporation, Appellants.

No. ED 85506.

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 21, 2006.

1. All statutory references are to RSMo 1994, unless otherwise indicated.

D. Keith Henson, Louis, MO, for appellant.

Joann Leykam, St. Charles County Counselor's Office, St. Charles, MO, for respondent.

NANNETTE A. BAKER, Presiding Judge.

A Joint Board or Commission ("Joint Board") and North East Community Action Board ("NECAC") appeal from a judgment of the trial court sustaining St. Charles County's motion for summary judgment. First, NECAC claims that the trial court erred in entering judgment in favor of St. Charles County because the St. Charles County Cooperative Agreement ("Agreement") executed on October 24, 1978 was valid and enforceable. Second, NECAC alleges that the trial court erred in entering judgment in favor of St. Charles County because NECAC is the proper administrative agency for the Agreement. Third, NECAC argues that the trial court erred in not applying the doctrine of estoppel to St. Charles County's claims because the Agreement is a valid contract. We find no error and affirm.

*Background*

St. Charles County Court held a meeting on October 24, 1978 and adopted a resolution ("Resolution") specifically authorizing the Presiding Judge of the County Court to enter into a cooperative agreement pursuant to Section 70.010.[1] Section 70.010 is the only referenced authorization for the county to enter into an intergovernmental agreement. The Resolution also authorized North East Community Action Public Housing Agency ("North East Community") to be designated as the administrative agency to act for and on behalf of St. Charles County.

Subsequently, St. Charles County executed an Agreement dated October 24, 1978, which joined the county with eleven other counties to cooperate in applying for Section 8 housing assistance from the United States Department of Housing and Urban Development ("HUD"). The Joint Board, previously established, was functioning as a signatory agency pursuant to the agreements previously executed by the other eleven counties. The Presiding Judge of the St. Charles County Court, on behalf of the county, executed the Agreement. The Agreement designated the Presiding Judge and the County Clerk of Lincoln County as the signatories to act on behalf of all of the undersigned counties for the purposes of applying for housing assistance and executing leases and contracts with HUD. The Agreement designated North East Community as the administrative agency to assist the counties and the joint boards in all necessary functions to successfully provide better housing for low income families.

In April 1980, North East Community was dissolved. NECAC, originally called North East Community Action Agency, incorporated in January 1981 and amended its name to its present name on April 2, 1982. Since January 1981, NECAC has functioned as the administrative agency

---

1. All statutory references are to RSMo.1978, unless otherwise indicated. The current version of this statute is substantially similar.

for each of the agreements and all twelve counties, including St. Charles County.

On September 28, 1993, the Joint Board approved a resolution changing the signatory county from Lincoln County to Pike County. HUD approved the change from Lincoln County to Pike County on November 3, 1993. On February 16, 1999, Joe Ortwerth ("Ortwerth"), St. Charles County Executive, sent a letter to Donald Patrick ("Patrick"), Executive Director of NECAC. Ortwerth told Patrick that St. Charles County wanted to assume administrative oversight for its own Section 8 vouchers. Ortwerth further stated that the letter was not meant to terminate any obligations of NECAC, St. Charles County or HUD, but was a request for NECAC to "consider transferring the administrative responsibilities of Section 8 vouchers in [St. Charles] county to St. Charles County Government." In response, NECAC passed a resolution on March 23, 1999, stating that:

> this agency will fully support the St. Charles County Government effort to establish their [sic] own Public Housing Authority and will extend complete cooperation and technical assistance in helping the County obtain their [sic] goal, however, it remains this Agency's position not to transfer administrative responsibility of current NECAC Section 8 Housing Assistance Program activities operated in the County upon such request . . .

On February 21, 2002, Pike County, as the signatory county, entered into a contract with NECAC to administer the Section 8 housing program.

## Standard of Review

This Court reviews summary judgment essentially de novo because the propriety of summary judgment is purely an issue of law. *Wilkes v. St. Paul Fire and Marine Ins. Co.*, 92 S.W.3d 116, 120 (Mo.App. E.D. 2002). The record is reviewed in the light most favorable to the party against whom judgment was entered, and that party is given the benefit of all reasonable inferences from the record. *Id.* Evidence presented in support of the motion is taken as true unless contradicted by the non-moving party's response to the motion. *Id.* The moving party bears the burden of proving that it is entitled to judgment as a matter of law and that no genuine issues of material fact exist. *Id.* A genuine issue exists where the record contains competent materials which evidence two plausible, but contradictory, accounts of essential facts. *Id.* A genuine issue is not an argumentative, imaginary, or frivolous dispute. *Id.* Grantor must establish that there is no genuine dispute as to those material facts upon which she would have had the burden of persuasion at trial. *Id.*

A defending party may establish a right to judgment by showing facts that negate any one of the elements of claimant's claim. *Trotter's Corp. v. Ringleader Rests., Inc.*, 929 S.W.2d 935, 939 (Mo.App. E.D.1996). If the movant meets this burden, the non-movant may not rest upon the mere allegations or denials of its pleading, but its response shall set forth specific facts showing that there is a genuine issue for trial. *Id.*

## Valid and Enforceable Contract

In its first point, NECAC claims that the trial court erred in entering judgment in favor of St. Charles County because the Agreement was a valid and enforceable contract. NECAC argues that the Resolution authorizing the presiding judge of the court to enter into the Agreement with the other counties was within the scope of the St. Charles County Court's power. Further, NECAC alleges

that the Agreement, when signed, met the requirements of Section 432.070.[2]

The Resolution passed contained five sections. Section 4 authorized the presiding judge and the county clerk to "make, execute and enter into a cooperative agreement pursuant to Section 70.010 RSMo., as amended, between this county and the [eleven other] counties ..." In 1978, Section 70.010 stated in its entirety:

> Two or more, *not exceeding ten,* contiguous counties may join in performing any common function or service, including the purchase, construction and maintenance of hospitals, almshouses, road machinery and any other county property and may join in the common employment of any county officer or employee common to each of the counties. The county commissions shall administer the delegated powers and allocate the costs among the counties. (emphasis added).

When St. Charles County purported to join the other eleven counties in the Agreement, it became the twelfth county in the joint venture. Additionally, the Agreement signed by the Presiding Judge states that it is made "pursuant to the provisions of Chapter 70.010 to 70.220 RSMO as amended ..." though the Resolution granted the Presiding Judge the authority to enter into a cooperative agreement pursuant only to Section 70.010.

The trial court found that the Agreement was made with counties in excess of the number allowed by the referenced statute and that the Agreement contained a claim to authority under additional sections of the statute. Therefore, the trial court held that the Presiding Judge "went beyond the authority given him by the County Court" and his act in signing the Agreement was ultra vires, making it void and unenforceable. We agree.

"An agreement which produces no legal obligation is occasionally called a void contract." Richard A. Lord, Williston on Contracts, Section 1.20 at 49 (4th ed.1990). "If an agreement is void, it cannot be a contract, for the law will neither give a remedy for its breach, nor recognize as a duty its performance." *Id.*

■ It is well settled law in Missouri that a contract made with a municipality in violation of the requirements in Section 432.070 [3] is void. *See Aquamsi Land Co. v. City of Cape Girardeau,* 346 Mo. 524, 142 S.W.2d 332, 337 (1940); *Needles v. Kansas City,* 371 S.W.2d 300 (Mo.1963); *Muncy v. City of O'Fallon,* 145 S.W.3d 870, 873 (Mo.App. E.D.2004). Due to the fact that municipalities represent the public, the courts unhesitatingly should enforce compliance with all mandatory provisions of the statutes intended to protect municipalities and their inhabitants. *Id.* A contract is void where the public agency fails to follow proper procedures and *exceeds its statutory authority. Miller v. Missouri Dept. of Transp.,* 32 S.W.3d 170, 176 (Mo.App. W.D.2000) (emphasis added). An ultra vires contract in its strict and true conception is one which is not within the power of the municipality to make. *Donovan v. Kansas City,* 352 Mo. 430, 175

---

**2.** In 1978, Section 432.070 read:

No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing.

**3.** Statutory reference is to RSMo.2004.

S.W.2d 874, 879 (1943). "A contract of a corporation which is ultra vires, in the proper sense—that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the Legislature—is not voidable only, but wholly void, and of no legal effect." *Id.* The objection to the contract is not merely that the corporation ought not to have made it, but that it could not make it. *Id.* The contract cannot be ratified by either party, because it could not have been authorized by either. *Id.* No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it. *Id.* It is ultra vires for a Missouri municipality to incur a liability not within the scope of its corporate powers or one not expressly authorized by law. *Id.* at 882. A contract made in violation of the statute is void rather than voidable. *Gill Constr., Inc. v. 18th & Vine Auth.,* 157 S.W.3d 699, 708 (Mo.App. W.D.2004). A contract is void where the public agency fails to follow proper procedures and exceeds its statutory authority. *Miller,* 32 S.W.3d at 176.

In the case before us, the Resolution authorized the Presiding Judge to sign an agreement *only* pursuant to Section 70.010. Thus, his act of signing an agreement pursuant to additional sections was outside his scope of authority, and therefore an ultra vires act. Additionally, the provisions of Section 70.010 authorize only ten counties to enter into a cooperative agreement to perform a common function or service. St. Charles County was the twelfth county to enter into the existing Agreement to administer Section 8 housing applications. Accordingly, we agree that these acts render the Agreement void and unenforceable.

The trial court provided additional findings that the Presiding Judge's signature on the Agreement was an ultra vires act. First, the trial court noted the lack of an end date or term of years in the Agreement, commenting that neither the minutes of the meeting nor the Resolution itself showed that the County Court intended to enter into an agreement in perpetuity. Second, the trial court noted the inclusion of an essential term allowing participating counties to reallocate authorized housing units to other participating counties if a county withdrew from the Agreement. The court felt that this was a material term of the Agreement, not authorized in the minutes nor in the Resolution and its inclusion rendered the Agreement void and unenforceable. We find that the inclusion of counties in excess of the statute and the expanded authority under Chapter 70 are sufficient to render the Agreement void *ab initio* and unenforceable. Under *de novo* review, it is unnecessary for us to review the court's additional findings. This point is denied.

### Proper Administrative Agency

In its second point relied on, NECAC claims that the trial court erred in entering judgment in favor of St. Charles County because NECAC is the proper administrative agency for the October 24, 1978 Agreement since North East Community has been dissolved and replaced in its function by NECAC. Further, NECAC argues that St. Charles County never objected to the substitution of NECAC as the administrative agency for the Agreement, and its claim to the contrary is barred by laches and waiver. Additionally, NECAC claims that Pike County, in its capacity as signatory county, entered into a written formal contract with NECAC on February 21, 2002, appointing NECAC as the administrative agency under the Agreement.

In the first point, we found that the contract is void *ab initio.* Accordingly, this point is now moot and we decline to discuss it further.

### Estoppel

■ In its third point, NECAC alleges that the trial court erred in not applying the doctrine of estoppel to St. Charles County's claims that the Resolution did not authorize the Agreement because St. Charles County Court had the power and authority to enter into the Agreement even if the Resolution constituted an irregular exercise of that power.

■ The fact that a municipality has received the benefit of a performance by the other party does not make the municipality liable either on the theory of ratification, estoppel or implied contract. *Gill Constr., Inc.,* 157 S.W.3d at 708. "A municipality ... is not estopped by an act or contract which is beyond the scope of its corporate powers ... The doctrine of estoppel may not be applied against a municipal corporation ... under a contract which is void." *Donovan,* 175 S.W.2d at 881 (quoting 31 C.J.S., Estoppel, p. 427, Section 143). Cities cannot be made liable, either on the theory of estoppel or implied contract, by reason of the accepting and using the benefits derived from void contracts. *Donovan,* 175 S.W.2d at 881. A void contract is a nullity, not even subject to ratification. *Ellis v. Williams,* 312 S.W.2d 97, 105 (Mo.1958).

In *Union Mkt. Merchants Assoc. Inc. v. City of St. Louis,* the Merchants Association attempted to use a 1978 lease-back agreement as its claim for relief and its defense against the City's cancellation of the lease. 643 S.W.2d 72, 73 (Mo.App. E.D.1982). The court noted that the 1978 agreement, upon which was based the City's liability resulting in the alleged credit, was not authorized by any municipal ordinance and was therefore a nullity. *Id.* Since the contract was a nullity and unenforceable, the court held that the City could not be liable. *Id.* Although the court noted that estoppel was not pleaded, it cited *Donovan* in holding that a municipality cannot be estopped by acts or contracts which violate statutory provisions. *Id.*

Similarly, in the case before us, the Agreement as it was written was not authorized by the Resolution, and is therefore a nullity. Because the Agreement is a nullity, it is unenforceable and St. Charles County cannot be held liable. The doctrine of estoppel cannot be applied to a null and void contract under Missouri law. This point is denied.

We affirm the judgment of the trial court.

ROBERT G. DOWD, JR., J., and SHERRI B. SULLIVAN, J., concur.