No. 99,678

JEROME S. TILZER, *et al.*, *Appellants*, v. DAVIS, BETHUNE & JONES, L.L.C., *et al.*, *Appellees*.

(204 P.3d 617)

Opinion filed April 3, 2009.

*William J. Skepnek*, of Skepnek Fagan Meyer & Davis, P.A., of Lawrence, argued the cause, and *Trey T. Meyer* and *Mark T. Emert*, of the same firm, and *Steven M. Smoot*, of Smoot Law Firm, P.C., of Houston, Texas, were with him on the brief for appellants.

*Daniel E. Hamann*, of Deacy & Deacy, LLP, of Kansas City, Missouri, argued the cause, and *Dale L. Beckerman* and *Spencer J. Brown*, of the same firm, were with him on the brief for appellees Davis, Bethune & Jones, L.L.C. and Grant L. Davis.

*Cathy J. Dean*, of Polsinelli Shalton Flanigan Suelthaus PC, of Kansas City, Missouri, and *Todd A. Gangel* and *Lori C. McGroder*, of Shook, Hardy & Bacon, L.L.P., of Kansas City, Missouri, were on the brief for intervenors/appellees Bristol-Myers Squibb Company and Eli Lilly and Company.

The opinion of the court was delivered by

JOHNSON, J.: Jerome S. Tilzer, individually and as plaintiff ad litem for Rita Tilzer, Todd A. Tilzer, and Jill Jokelson (hereafter collectively referred to as Tilzers) appeal the granting of summary judgment in favor of the defendants, Grant L. Davis and Davis, Bethune & Jones, LLC (hereafter collectively referred to as Davis), in this legal malpractice action. Tilzers raise four issues on appeal: (1) whether Tilzers' legal malpractice claims are compulsory counterclaims to Davis' motion to enforce an attorney lien in a prior Missouri state court action and therefore barred by res judicata in the present action; (2) whether Tilzers' claims are barred by collateral estoppel based upon the litigation in the Missouri action; (3) whether the district court erred in ruling that the "Global Settlement" in the Missouri action was not an "aggregate settlement" within the meaning of Rule 4-1.8(g) of the Missouri Rules of Professional Conduct (Rule 4-1.8[g]); and (4) whether the district court erred in ordering certain documents to be sealed. We find that the district court did not abuse its discretion in ordering that the confidential settlement documents be filed under seal. However, the court did err in holding that Tilzers' claims were compulsory counterclaims in the Missouri action and that collateral estoppel applied to the aggregate settlement issue. Therefore, we reverse and remand.

*FACTUAL OVERVIEW*

In September 2001, Rita Tilzer hired attorney Grant L. Davis and his firm Davis, Bethune & Jones, L.L.C., to represent her in an action against drug manufacturers Eli Lilly and Company and Bristol-Meyers Squibb Company for negligently enabling pharmacist Robert Courtney to dilute her cancer drugs. The lawsuit was one of several hundred individual suits filed in Jackson County, Missouri, by cancer patients or their surviving family members; Davis represented many, but not all of the plaintiffs. After Rita

Tilzer died in January 2002, her husband and children were substituted as plaintiffs. Derek E. Jokelson, an attorney from Philadelphia and son-in-law of Rita Tilzer, acted as cocounsel for Tilzers after being admitted pro hac vice in the Missouri proceeding. Jokelson is not a named defendant in the Kansas malpractice action.

After commencement of the trial in another patient's separate case in October 2002, the pharmaceutical companies offered a settlement proposal. After mediation, a settlement agreement was reached in which all plaintiffs who had filed a lawsuit against the companies were eligible to "opt in." Under the agreement, titled "Global Settlement," the defendants would establish a settlement fund of not less than a specified amount and not more than a specified amount, with the exact amount to be determined through binding arbitration.

The Missouri trial judge, Judge Lee Wells, appointed two special masters. One was a former circuit court judge and the other was a former Missouri Court of Appeals judge. Judge Wells worked with the special masters to develop a system for evaluating the individual claims, apparently with a view to avoiding the Global Settlement being classified as an aggregate settlement. Essentially, the special masters would apply uniform standards to each claimant who had opted in to the settlement and would determine the amount of money each claimant would receive from the settlement fund.

Tilzers opted in to the settlement agreement and completed the applicable claim form. The documents that Tilzers signed included an agreement to keep the terms of the settlement confidential. The special masters established the dollar amount to be awarded to Tilzers, and Judge Wells approved that award, despite Tilzers' objection. On November 24, 2003, the pharmaceutical companies filed a motion to enforce the settlement agreement, requesting that the court order Tilzers to execute a dismissal with prejudice and otherwise comply with the terms of the agreement. Two days later, Davis filed a motion to enforce an attorney's lien in the Missouri case.

Tilzers opposed the motion to enforce settlement, arguing that the agreement was "(1) illegal and unethical on its face; (2) [was] in violation of Rule 4-1.8(g); and (3) [had] been obtained through

deceit and fraud *in factum.*" At a December 22, 2003, hearing, Tilzers acknowledged that a formal response to the attorney's lien motion had not yet been filed, but advised Judge Wells that Tilzers' arguments in opposition to Davis' attorney's lien motion would track Tilzers' response to the drug companies' settlement enforcement motion. With the parties' consent, the judge continued the hearing on Davis' attorney's lien motion to January 2, 2004.

On December 30, 2003, Tilzers filed a counterclaim against Davis, alleging breach of fiduciary duty, professional negligence, and breach of contract. Tilzers asserted the same claims in a separate action filed in the United States District Court for the District of Kansas prior to January 2, 2004. That separate federal court action was subsequently dismissed for lack of complete diversity.

At the scheduled motion hearing on January 2, 2004, Tilzers sought a continuance to allow for discovery on its counterclaim. Tilzers expressed concern that the legal malpractice claim might later be deemed a compulsory counterclaim to the motion for enforcement of the attorney's lien, and, if so, Tilzers asserted that they were entitled to fully litigate the matter, including the right to conduct discovery and to submit the question to a jury. Judge Wells expressed a desire to conclude the Missouri case and denied the continuance. However, the judge informed the parties that he did not intend for his ruling on the attorney's lien motion to foreclose any future legal malpractice action. The Tilzers withdrew from the hearing to avoid a later claim that they were collaterally estopped on their legal malpractice claims. The court heard the testimony of Grant Davis and Jerome Tilzer.

In its January 14, 2004, order, the court granted Davis' motion on the attorney's lien and memorialized its order granting enforcement of the settlement agreement. Judge Wells specifically found that the Global Settlement was not an aggregate settlement within the meaning of Rule 4-1.8(g), because of the methodology developed by the court and special masters. The court also found no credible evidence of any misconduct by Davis.

The Tilzers did not appeal the Missouri trial court's rulings. On April 5, 2004, Tilzers dismissed their counterclaim. Approximately 3 weeks later, Tilzers filed the instant legal malpractice action in

the District Court of Johnson County, Kansas, claiming breach of fiduciary duty, professional negligence, negligent misrepresentation, breach of contract, and fraud arising from Davis' representation in the Missouri action. Tilzers specifically alleged that the Missouri settlement agreement was effectively an aggregate settlement and that Davis had failed to comply with the disclosure requirements of Rule 4-1.8(g).

During discovery in the Kansas malpractice action, Tilzers filed a motion to compel the testimony of Grant Davis, to which they attached documents containing information which they had agreed to keep confidential in the Missouri proceeding. The pharmaceutical companies intervened to request that the Kansas court order that any documents, pleadings, or other materials containing the terms of the Missouri settlement agreement be filed and maintained under seal. Over Tilzers' objection, the Kansas court granted the intervenors' motion.

Davis filed a summary judgment motion, claiming that the malpractice claims were compulsory counterclaims to the motion to enforce his attorney's lien in the Missouri action and, accordingly, were now res judicata in the Kansas action. Further, Davis argued that the aggregate settlement question, as well as the other claims of legal malpractice, were litigated as defenses to the motion to enforce the attorney's lien in the Missouri proceeding, and, therefore, the doctrine of collateral estoppel also precluded relitigating the issues in the current proceeding. The Tilzers responded with their motion for partial summary judgment, asking the court to find that Davis participated in the making of an aggregate settlement without providing Tilzers with the disclosures required by Rule 4-1.8(g).

The Johnson County District Court granted summary judgment to Davis, finding that all of Tilzers' claims arose from the attorney-client relationship in the Missouri action for which Davis had sought to enforce an attorney's fee lien. The Kansas court interpreted the Missouri compulsory counterclaim rule as requiring Tilzers' malpractice claims to have been asserted in the Missouri action, and, accordingly, found Davis "entitled to summary judgment on the codified *res judicata* claim preclusion grounds." Further,

the Kansas court determined that Tilzers were collaterally estopped from relitigating the aggregate settlement question.

The Kansas court denied Tilzers' motion for partial summary judgment, reasoning that because "the amount that each of [Davis'] clients would receive [under the settlement] was not and could not have been known by the lawyers prior to the announcement to all of the opted in claimants . . . this could not be an aggregate settlement contemplated by the rules of professional conduct."

Tilzers filed a timely appeal of the summary judgment rulings, and the case was transferred to this court, pursuant to K.S.A. 20-3018(c).

## STANDARDS OF REVIEW

Procedurally, this case involves the review of the district court's rulings on summary judgment motions, the standard for which has been stated as:

" ' " 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citations omitted.]" ' " *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 39, 169 P.3d 1052 (2007).

To the extent we are called upon to interpret statutory provisions, we will exercise unlimited review. *Genesis Health Club, Inc. v. City of Wichita*, 285 Kan. 1021, 1031, 181 P.3d 549 (2008). However, we accord deference to the district court's determination of which, if any, documents or pleadings are to be filed under seal, and we will review that determination for an abuse of discretion. *Cf. In re Tax Appeal of City of Wichita*, 277 Kan. 487, 513, 86 P.3d 513 (2004) (district court has discretion over discovery matters and

any decision made by the court in that regard will not be disturbed on appeal absent a clear abuse of that discretion).

## COMPULSORY COUNTERCLAIM

The district court agreed with Davis' argument that Tilzers' malpractice claims in the Kansas action were barred by res judicata based upon Missouri's compulsory counterclaim rule. That rule provides in relevant part:

"(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim that at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." 1 Mo. Court Rules § 55.32 (2008).

Citing to *Jewish Hosp. of St. Louis v. Gaertner*, 655 S.W.2d 638, 641 (Mo. App. 1983), the Kansas court found:

"Under the plain meaning of Rule 55.32(a) and the interpretation given to that language by Missouri courts, a claim for damages based upon negligent performance of services arises from the same transaction as does a claim for non-payment for those same services. Thus, in an action by an attorney to recover fees from a client, a malpractice claim by that same client would be a compulsory counterclaim."

Tilzers' arguments had focused on whether Davis was an "opposing party" within the meaning of the rule, rather than challenging whether the malpractice claims arose from the same transaction that gave rise to the attorney's fee lien. The district court acknowledged Tilzers' argument that *Gaertner* is distinguishable because it was an independent collection action, where the malpractice claimant was the named defendant and the party seeking unpaid fees was the plaintiff, *i.e.*, they were unquestionably "opposing parties." Here, in contrast, Davis was not a party to the underlying action. Tilzers contended that the distinction was critical because a counterclaiming defendant in an independent collection action possesses procedural benefits which were unavailable to Tilzers in the motion proceeding, such as the right to conduct discovery and the right to a jury trial.

The district court rejected the argument, finding that in applying the counterclaim rule in Missouri, an attorney seeking to enforce an attorney's fee lien in the underlying lawsuit is just as much an opposing party to the client (or former client) as if the attorney had brought a separate lawsuit against the former client to collect the fees. For support under Missouri precedent, the district court cited to *Hemme v. Bharti*, 183 S.W.3d 593, 596 (Mo. 2006), for the proposition that

"[T]he counterclaim rule is not limited to claims by a defendant against a plaintiff—Rule 55.32(a) does not use those labels. So it is possible for co-parties in some circumstances to be 'opposing parties,' for example, when one co-party brings a claim for its own damages against another co-party. In that circumstance, they would be opposing parties—though both originally are co-defendants—and, thus, would be subject to the compulsory counterclaim rule."

*Hemme* involved a personal injury action in which the plaintiff and defendant had been codefendants in a previous action. In the prior case, the personal injury defendant (then codefendant) had cross-claimed for indemnity and contribution, but the personal injury plaintiff (then codefendant) had not cross-claimed for the personal injury being claimed in the current personal injury lawsuit. The trial court found that the personal injury claim was compulsory in the prior action and therefore barred by res judicata in the current action. The Missouri Supreme Court reversed, holding that "[t]he compulsory counterclaim rule does not require a defendant against whom a cross-claim for indemnity, contribution or apportionment of fault is asserted to set forth her claim for injuries against her cross-claiming co-defendant in a response." 183 S.W.3d at 595. In the dictum quoted by the Kansas court, *Hemme* was explaining that the compulsory counterclaim statute was not textually limited to plaintiffs and defendants, so that a possibility remained that coparties could be "opposing parties" under some circumstances. However, the opinion did not stretch so far as to suggest that a nonparty to an action could trigger the compulsory counterclaim statute by filing a motion to enforce a lien against the judgment rendered in that action.

Although the Kansas court recited that Missouri law would govern the claim preclusion issue, it relied heavily on an opinion from

the New Mexico Court of Appeals, *Computer One, Inc. v. Grisham & Lawless, P.A.*, 141 N.M. 869, 873, 161 P.3d 914 (Ct. App. 2007), *rev'd* 144 N.M. 424, 188 P.3d 1175 (2008), which involved similar facts and a similar compulsory counterclaim statute. There, the law firm representing Computer One in a contract action entered into a settlement agreement. Computer One refused to comply with the settlement, claiming the law firm did not have authority to enter into the agreement. The law firm withdrew and subsequently filed notice of a charging lien against the settlement proceeds. The other party to the contract dispute sought court enforcement of the settlement agreement. The trial court found that the law firm was authorized to enter into the agreement and ordered its enforcement.

Computer One objected to the attorney's fee charging lien, arguing that the fees were unreasonable and excessive and renewing the claim that the firm never had authority to enter into the settlement agreement. The court dismissed Computer One's objections as untimely filed and ordered disbursement of the settlement funds including payment of the attorney's fee lien.

Over a year later, Computer One brought a legal malpractice claim against the firm, asserting negligence in handling their claims and settlement negotiations. The firm moved for summary judgment, arguing that the malpractice action was precluded because it was a compulsory counterclaim to the charging lien. The firm also argued that the malpractice allegations were substantively the same as the defenses asserted against the charging lien, and therefore those allegations could not be relitigated. The New Mexico Court of Appeals affirmed the trial court's granting of summary judgment for the law firm, reasoning that Computer One met the definition of an "opposing party" to the firm's charging lien, even though the charging lien was filed in the underlying lawsuit. 144 N.M. at 428.

Subsequent to the district court's memorandum decision in this case, the New Mexico Supreme Court reversed the Court of Appeals, finding that an "opposing party" under that state's compulsory counterclaim law, Rule 1-013(A), " 'must be one who asserts a claim against the prospective counterclaimant in the first in-

stance.' " 144 N.M. at 430. Since the lien was asserted in the underlying litigation and not in a separate collection action naming Computer One as the defendant, the adversarial requirement had not been met. The Supreme Court further explained:

"The notion of fair notice implicit in Rule 1-013(A) follows one's status as an opposing party. Nothing in that rule speaks about 'degrees of hostility' or a 'sufficiently adversarial' relationship, or other terms susceptible to a variety of interpretations, as a substitute for being an 'opposing party.' Nothing in Rule 1-013(A) would force a compulsory counterclaim on one who is not first a 'party.' Given the grave consequences of Rule 1-013(A), we think that rule is better served by a sense of certainty and predictability implicit in the notion that one must first be a 'party' before one can be an 'opposing party.' . . . [A]n attorney does not transform his former client into either, merely by taking steps to secure attorney fees in the same underlying proceeding.

"On the other hand, if the Firm had wanted to file a separate suit for breach of contract against Computer One for its attorney fees, then . . . Computer One would have had to press its legal malpractice allegations simultaneously as a compulsory counterclaim. [Citation omitted.] The Firm chose not to do so." *Computer One*, 144 N.M. at 431.

While the New Mexico precedent is not binding authority, its reasoning is persuasive, especially in light of Missouri case law establishing the methods by which attorneys may recover fees from their clients: (1) By proceeding against the client; (2) by proceeding against the defendant, either by motion in the original case or in an independent proceeding; or (3) by proceeding against the judgment itself. *Nelson v. Massman Const. Co.*, 120 S.W.2d 77, 89 (Mo. App. 1938). By moving to enforce an attorney's fee lien in the underlying action, Davis was proceeding against the judgment itself, not against the former client. Such an action does not transform the former client into an "opposing party" for purposes of the compulsory counterclaim rule. To invoke that rule, Davis had to file an independent action against Tilzers, *i.e.*, had to become a "party" in the first instance.

In conclusion, the district court erred in finding that Missouri's compulsory counterclaim rule required Tilzers to assert their legal malpractice claims as a response to Davis' motion to enforce an attorney's fee lien in the underlying Missouri lawsuit. Summary judgment on the issue of claim preclusion is reversed.

## COLLATERAL ESTOPPEL

Alternatively, the Kansas court found that Tilzers were precluded from relitigating the aggregated settlement issue in the present case under the doctrine of collateral estoppel. That doctrine operates to preclude the reconsideration of issues that were actually litigated in the prior proceeding, in contrast to claim preclusion which bars the assertion of claims which should have been brought in the prior proceeding. See *Hollida v. Hollida*, 190 S.W.3d 550, 555 (Mo. App. 2006). Thus, although we have found that Tilzers' malpractice claim was not barred in the present case, we must also determine if Tilzers can assert their aggregate settlement issue as a basis for that claim in Kansas. *Cf. Computer One*, 144 N.M. at 434 (issues litigated in defending against attorney's fee lien precluded in subsequent malpractice action).

The district court applied Missouri law to the collateral estoppel question. See *Durfee v. Duke*, 375 U.S. 106, 109, 11 L. Ed. 2d 186, 84 S. Ct. 242 (1963) (Full Faith and Credit Clause of United States Constitution requires State enforcing foreign judgment to apply rendering state's law if more preclusive than that of enforcing state). The parties do not challenge that choice of law. The Missouri test has been stated as:

"In deciding whether collateral estoppel applies, the following four factors are considered: (1) is the issue in the present case identical to the issue decided in the prior adjudication; (2) was there a judgment on the merits in the prior adjudication; (3) is the party against whom collateral estoppel asserted the same party or in privity with a party in the prior adjudication; and (4) did the party against whom collateral estoppel is asserted have a full and fair opportunity to litigate the issue in the prior suit[?] The doctrine applies only to those issues that were necessarily and unambiguously decided. [Citation omitted.]" *State ex rel. Johns v. Kays*, 181 S.W.3d 565, 566 (Mo. 2006).

Tilzers concede that the first factor (identical issue) and the third factor (identical parties) were both met in this case. They challenge the applicability of collateral estoppel based upon the second and fourth factors, asserting that the Missouri court did not enter a judgment on the merits and that Tilzers did not have a full and fair opportunity to litigate the issue in that proceeding.

The second collateral estoppel factor was considered in *Wilkes v. St. Paul Fire and Marine Ins. Co.*, 92 S.W.3d 116, 121 (Mo. App. 2002), which stated:

"A judgment on the merits is one rendered when it is determined which party is in the right after argument and investigation, as distinguished from a judgment rendered upon some preliminary or technical point, or by default, and without trial. [Citation omitted.] Where there is a question of whether a previous decision went to the merits of the case, no preclusive effect is given to the earlier decision."

*Wilkes* found that the requirement of a judgment on the merits of an issue was satisfied in a summary judgment where the court's memorandum of decision reflected that it had considered and resolved the issue. 92 S.W.3d at 121.

Tilzers argue that *Wilkes* is distinguishable because the parties in that case had filed a petition and an answer and had engaged in discovery. In contrast, the Tilzers point out that they filed a counterclaim which was dismissed without a responsive pleading. They claim that "[t]here was no argument or investigation, no judicial determination of which party was in the right." We disagree.

In challenging the enforcement of the settlement agreement, Tilzers explicitly argued that the Global Settlement was invalid because it was an aggregate settlement within the meaning of Rule 4-1.8(g). The Missouri court rejected that argument, finding that the settlement was not an aggregate settlement within the purview of Rule 4-1.8(g). With respect to the attorney's fee lien motion, Tilzers' counsel clearly advised Judge Wells that part of the defense to the motion was that Davis violated the disclosure requirements of Rule 4-1.8(g). Given that those disclosure requirements are only triggered by an aggregate settlement, Tilzers were simply advancing the same issue, *i.e.*, whether the Global Settlement was an aggregate settlement. In short, the issue was clearly argued to the Missouri court.

Granted, Judge Wells did explicitly state that it was not the court's intent to foreclose a subsequent malpractice action by ruling on the motion to enforce the attorney's fee lien. However, the Missouri court clearly considered the issue of whether the Global Settlement was a Rule 4-1.8(g) aggregate settlement and resolved that issue adversely to the Tilzers, *i.e.*, the court made a "judicial

determination of which party was in the right" on that particular issue. Moreover, the Missouri court offered its reasoning for that decision. In other words, consistent with *Wilkes*, the Missouri court entered a judgment on the merits of the aggregate settlement issue.

To the extent Tilzers complain about the posture of the pleadings in the case at the time of judgment or the lack of an opportunity to fully investigate the issue prior to judgment, they are challenging whether the issue was ripe for a judgment on the merits. However, that query does not affect the second factor of whether the Missouri court did, in fact, enter a judgment on the merits.

In analyzing the fourth factor or element of collateral estoppel, *i.e.*, whether Tilzers had a full and fair opportunity to litigate the issue in the Missouri lawsuit, the Kansas court noted that Missouri courts look at an additional four factors to resolve this step, to wit:

"(1) did the party against whom collateral estoppel is asserted have a strong incentive to litigate the prior adjudication; (2) does the second forum afford the party against whom collateral estoppel is asserted procedural opportunities not available in the first action; (3) is the prior judgment, upon which collateral estoppel is based, inconsistent with one or more prior judgments; and (4) was the forum in the first action substantially inconvenient to the party against whom collateral estoppel is asserted[?]" *Wilkes*, 92 S.W.3d at 122.

The third and fourth factors are not in play in this case. There was no prior inconsistent judgment, and the Missouri proceeding was not inconvenient for the parties.

On the first factor, the Kansas court rejected Tilzers' argument that they did not have a strong incentive to litigate the issue in the Missouri lawsuit because that action was not the " 'proper forum to fulfill their rights.' " The court opined that Tilzers "strongly wished to litigate the issue of the aggregate settlement," but that they "just wished to litigate the issue in this court, not in Missouri." That rationale appears to overlook that the aggregate settlement issue was simply a component of Tilzers' overarching claim that Davis had committed malpractice in representing them in the Missouri action. Tilzers "strongly wished" to fully litigate their entire claim of malpractice in a manner consistent with the procedural and substantive rights which would have been available to them in

a separate malpractice lawsuit. Once Judge Wells clarified that he was going to rule on the motion to enforce the attorney's fee lien without a full litigation of all of the malpractice allegations and without prejudice to further litigation on the question of malpractice, the Tilzers had scant incentive to partially litigate their claim on the aggregate settlement subissue.

The Kansas court acknowledged that Tilzers had "a stronger argument on the second factor"—that the Kansas proceeding offered procedural opportunities not available in the Missouri action. Nevertheless, the district court determined that Tilzers did have some discovery opportunities in Missouri and that they had failed to identify any witness or document that was not available to them in Missouri. That rationale is unpersuasive.

The short time line in the motion proceedings made meaningful discovery impracticable. Moreover, it is counterintuitive to declare that the unavailability of discovery is not prejudicial unless the complaining party can identify the witnesses and documents that would have been discovered. One of the purposes of the discovery process is to enable a party to learn of those witnesses and documents which will be useful in the litigation. On the other hand, Tilzers do not explain how having a jury as the factfinder or having discovery to obtain additional facts would have affected Judge Wells' ruling on the *legal* effect of the Global Settlement. Nevertheless, there can be no question that the independent lawsuit in Kansas offered Tilzers procedural opportunities that were unavailable to them in the Missouri proceedings on Davis' motion.

Additionally, the collateral estoppel doctrine in Missouri only applies "to those issues that were necessarily and unambiguously decided" in the prior adjudication. See *Kays*, 181 S.W.3d at 566. While Judge Wells unambiguously ruled that the Global Settlement was not invalid as an aggregate settlement, his ruling on the issue in the context of the attorney fees motion is less straightforward. More importantly, however, a ruling on the aggregate settlement issue does not appear to have been necessary for Judge Wells' decision on Davis' attorney's fee lien motion.

The Missouri court announced that its order enforcing the attorney's fee lien would not affect Tilzers' malpractice claims against

Davis. Apparently, the court viewed the task presented by the attorney's fee lien motion to be a calculation of the amount of fees that Tilzers contracted to pay Davis and a determination of the reasonableness of those fees. In that event, the aggregate settlement issue was only relevant, if at all, to the question of whether Tilzers were entitled to an offset against Davis' attorney's fee lien based on malpractice. If the Missouri court was declining to rule on the malpractice claim, it had no reason to reach the subissue within that claim regarding any violations of the disclosure requirements of Rule 4-1.8(g). In other words, the ruling on the aggregate settlement issue was gratuitous and unnecessary to the decision rendered on the attorney's fee lien.

Perhaps more fundamentally, Rule 4-1.8(g) is a rule of professional conduct defining an unethical conflict of interest for an attorney representing two or more clients in a particular action. It is not a statutory provision governing the validity of settlement agreements, *i.e.*, rendering aggregate settlements unlawful as a matter of law. Indeed, if all of the plaintiffs in the Missouri lawsuit had been represented by separate counsel, Rule 4-1.8(g) would not have applied, regardless of the terms of the settlement.

Likewise, compliance with the ethical rule is not necessarily a condition precedent to the enforcement of an attorney's fee lien. The preamble to the Kansas Rules of Professional Conduct (KRPC) Rule 226 (2008 Kan. Ct. R. Annot. 391) explains the scope and function of the rules, clarifying that an ethical violation does not establish a per se claim for malpractice:

"Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. In addition, violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the rules can be subverted when they are involved by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule." KRPC (Preamble-Scope) 2008 Kan. Ct. R. Annot. at 395.

Likewise, this court has opined:

"An attorney's violation of the ethics rules cannot create a cause of action to adverse litigants or even to clients. This is because the ethics rules do not impose a legal duty on the attorney owing to either a client or a third party. Occasionally, attorney conduct which violates an ethics rule may also violate an independent legal duty and a cause of action may ensue. It is the violation of the independent legal duty, not the ethics rule, that gives rise to a cause of action." *OMI Holdings, Inc. v. Howell*, 260 Kan. 305, Syl. ¶ 1, 918 P.2d 1274 (1996).

Thus, even in the Kansas malpractice action, a finding that Davis violated Rule 4-1.8(g) is unnecessary. Obviously, the Missouri action was not an attorney disciplinary proceeding, and an interpretation of the applicability of the ethical rules was not required. Accordingly, the Kansas district court erred in applying the doctrine of collateral estoppel.

## AGGREGATE SETTLEMENT

The Kansas district court's decision included a denial of Tilzers' motion for partial summary judgment on the question of whether Davis participated in making a Rule 4-1.8(g) aggregate settlement without making the requisite disclosures. The district court found that the Global Settlement was not an aggregate settlement because the information required to be disclosed under the rule was not and could not have been known. We disagree with the analysis. The lack of information would actually support a finding that it was an aggregate settlement.

To review, Missouri Rule 4-1.8(g) provides that an attorney representing two or more clients is not to participate in an aggregate settlement of the clients' claims, unless each client has given a written, signed, and informed consent to the settlement. To obtain the consent, the attorney's disclosure to the clients is to include the existence and nature of all of the claims and of the participation of each person in the settlement.

The parties acknowledge that neither Kansas nor Missouri has any law specifically defining an aggregate settlement. We have located no assistance from the law of any of our sister states. We note that Tilzers cite to *Straubinger v. Schmitt*, 348 N.J. Super. 494, 792 A.2d 481 (2002), and Davis cites to *Arce v. Burrow*, 958

S.W.2d 239, 245 (Tex. App. 1997), *aff'd in part and rev'd in part*, 997 S.W.2d 229 (Tex. 1999), but find neither case to be sufficiently on point to assist with interpreting whether the terms of the Global Settlement constituted an aggregate settlement.

Although not cited by either party, we note that the American Law Institute (ALI) has recently completed a 5-year project on the development of the Principles of the Law of Aggregate Litigation, issuing its Tentative Draft No. 1 on April 7, 2008. The ALI distinguishes between class action and non-class action aggregate settlements, defining the latter as follows:

"Definition of a Non-Class Aggregate Settlement

"(a) A non-class aggregate settlement is a settlement of the claims of two or more individual claimants in which the resolution of the claims is interdependent.

"(b) The resolution of claims in a non-class aggregate settlement is interdependent if:

(1) the defendant's acceptance of the settlement is contingent upon the acceptance by a number or specified percentage of the claimants; or

(2) the value of each claim is not based solely on individual case-by-case facts and negotiations." Principles of the Law of Aggregate Litigation § 3.16, p. 322.

Under this definition, interdependency is the key. The commentary notes that the definition incorporates the two settlement characteristics that render claims interdependent: (1) collective conditionality and (2) collective allocation. The former suggests that a settlement conditioned on the acceptance of a specific percentage of claimants is an aggregate settlement. The latter establishes the existence of an aggregate settlement if the value of each claim is determined by any method other than on an individual basis. The ALI also recognizes the possibility of "multiclaimant nonaggregate settlements," which it defines as a settlement where the defendant is "willing to negotiate an individual, fact-specific settlement for each claimant without setting a cap on the aggregate. damages or insisting that a set percentage of the potential claimants agree to the settlement." Principles of the Law of Aggregate Litigation § 3.16, p. 325.

The ALI provides a helpful illustration:

"An attorney represents 100 plaintiffs complaining of various injuries caused by an allegedly defective drug manufactured by Defendant. During settlement ne-

gotiations the attorneys for the plaintiffs and Defendant individually assess each claim with a goal that the total settlement would equal $1 million. Defendant agrees to the settlement only if at least 95 percent of all of the claimants agree. The settlement is an aggregate one under subsection (b)(1), even though the amounts were individually negotiated, because Defendant has conditioned its acceptance of the settlement on a set percentage of claimants agreeing to the settlement and because Defendant placed a cap on the collective settlement." Principles of the Law of Aggregate Litigation § 3.16, pp. 325-26.

Similarly, Tilzers point us to the ABA definition, which states that "an aggregate settlement occurs 'when two or more clients who are represented by the same lawyer together resolve their claims or defenses or pleas.' " ABA/BNA Lawyers' Manual on Professional Conduct, p. 51:377 (2006). The ABA Manual notes that "a settlement of a group of related claims is an aggregate settlement unless (1) a particular amount is negotiated on behalf of each individual plaintiff, and (2) each plaintiff is free to accept or reject the offer without affecting anyone else's settlement." ABA/BNA, p. 51:378.

Under the ALI definition, the Global Settlement had both characteristics of interdependency which define an aggregate settlement. There was collective conditionality because the pharmaceutical companies were granted the right to opt out of the settlement if fewer than all of the covered plaintiffs accepted the proposed settlement. Although Judge Wells attempted to circumvent the conditional allocation characteristic by appointing special masters to individually assess each claim, the Global Settlement contained a maximum amount that the defendants would pay into the settlement fund and provided for an across-the-board minimum payment to all opt-in claimants. In other words, each claimant did not receive individualized, fact-specific damages, but rather each claimant received an individualized, fact-specific allocation of a proportion of the capped settlement fund, subject to a minimum award for every participant.

Likewise, the Global Settlement runs afoul of the ABA guidelines. A particular amount of damages was not negotiated on behalf of each individual plaintiff. Rather, a percentage of the total settlement fund was established for each individual plaintiff. Thus,

the amount awarded to one plaintiff directly affected the amount of the other plaintiffs' awards. More importantly, each plaintiff was not free to accept or reject the special masters' proffered award, as poignantly illustrated by Judge Wells' order forcing Tilzers to accept their calculated share of the pot.

Therefore, notwithstanding the concerted effort of Judge Wells and the special masters to devise a mechanism to avoid labeling the Global Settlement as an aggregate settlement, the defining characteristic of interdependency remained intact. The terms of the Global Settlement contained all of the important features of an aggregate settlement.

The Kansas district court was seduced by Judge Wells' opinion that the Global Settlement could not be an aggregate settlement because the information that Rule 4-1.8(g) required to be disclosed to obtain an informed consent was not available to Davis. However, that dearth of information was the direct result of the interdependent characteristics of the Global Settlement, *i.e.*, the information could not be ascertained because the arrangement was an aggregate settlement. Rather than establishing a non-aggregate settlement, the unavailability of the information required to be disclosed by Rule 4-1.8(g) simply corroborated that it was an aggregate settlement and rendered it impossible for Davis to obtain an informed consent under the rule. The district court's ruling to the contrary was erroneous.

## SEALED DOCUMENTS

Finally, Tilzers challenge the district court's granting of the intervening drug companies' motion to maintain the confidentiality of the settlement agreement reached in the Missouri action. Tilzers base their complaint upon the public's interest in knowing the details of the settlement agreement.

Tilzers do not dispute that they entered into and personally signed a confidentiality agreement on at least two of the documents involved in the Missouri settlement and that the Missouri court memorialized the confidentiality agreement by entering appropriate protective orders in that proceeding. Accordingly, they acknowledge that the intervenors have a contractual right to have the

settlement terms remain confidential. Nevertheless, they suggest that private contract rights must always give way to the public interest, and they contend that the intervenors failed to show any public interest in maintaining the confidentiality of the settlement agreement.

First, we ascribe more significance to an entity's rights under a court-approved settlement agreement than Tilzers would suggest. In deciding whether information should be sealed, a court should consider the interests of the party seeking confidentiality, as well as the public's interest. *Cf. In re Tax Appeal of City of Wichita*, 277 Kan. 487, 514, 86 P.3d 513 (2004) (in deciding whether to permit discovery, court should balance the interest in obtaining the information against the resisting party's interest, as well as the public interest in maintaining confidentiality of the material). Obviously, the intervenors had an interest in shielding all of the terms of their current settlement offer from future plaintiffs.

In addition, the law and policy of this State is to favor out-of-court settlements of disputed claims. See, *e.g., Bright v. LSI Corp.*, 254 Kan. 853, 860, 869 P.2d 686 (1994) (recognizing a strong public policy supporting settlement); *Kennedy v. City of Sawyer*, 228 Kan. 439, 461, 618 P.2d 788 (1980) ("Settlements between injured parties and tortfeasors are favored in the law."). As the intervenors and Davis point out, it is unlikely that a settlement would have been reached in this case without the confidentiality provision. Certainly, settling over 300 individual lawsuits without trial is in the public interest.

In contrast, Tilzers do not contradict the intervenors' argument to the district court that publicizing the settlement terms would not advance Tilzers' claims of malpractice in the Kansas case and maintaining the confidentiality of the settlement terms would not impede the pursuit of the legal malpractice action. Instead, Tilzers simply declare that the impact upon them of the partial sealing of documents "has no significance." We take that as a concession that the court order sealing certain documents did not prejudice Tilzers in the prosecution of their legal malpractice action.

The overarching theme of Tilzers' impassioned argument on this issue appears to be that the public has a right to know that the

pharmaceutical companies orchestrated an illegal settlement of a highly publicized and emotional case. Tilzers are in the wrong venue to make that argument. This is a legal malpractice action, where the most that will be established is that Tilzers' own former attorneys breached a legal duty by laboring under a conflict of interest among several clients involved in a single settlement agreement. The legality of the pharmaceutical companies' actions in proposing the settlement will not be implicated in any manner. Judge Wells' ruling that the settlement agreement was legal and valid will not be overturned. In short, Tilzers should have attempted to shine the light of public scrutiny upon the Missouri proceedings, rather than attempt to circumvent the Missouri court's protective orders in this Kansas proceeding.

In conclusion, we find that the Kansas district court's order sealing those documents that contained confidential information about the Missouri settlement agreement was not an abuse of discretion. However, the district court's granting of Davis' summary judgment motion is reversed, and the matter is remanded for further proceedings.

Affirmed in part, reversed in part, and remanded for further proceedings.

DAVID J. KING, District Judge, assigned.