**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 27, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

VIRGIL WILLE,

      Plaintiff - Appellant,

v.

GRANT DAVIS,

      Defendant - Appellee.
_____

RONALD M. BOEHMER; RONDA
CARRANZA,

      Plaintiffs - Appellants,

v.

GRANT DAVIS,

      Defendant - Appellee.
_____

PEGGY S. WALDON; JAMES
CHARLES WALDON; MARILYN
SMITH,

      Plaintiffs - Appellants,

v.

GRANT DAVIS,

      Defendant - Appellee.
_____

No. 15-3167
(D.C. No. 5:11-CV-04121-RDR-KGS)
(D. Kan.)

No. 15-3204
(D.C. No. 5:11-CV-04059-KHV)
(D. Kan.)

No. 15-3205
(D.C. No. 5:11-CV-04060-KHV)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

_____

Before **BRISCOE**, **LUCERO**, and **PHILLIPS**, Circuit Judges.

_____

In these consolidated appeals, Plaintiffs Virgil Wille (No. 15-3167), Ronald Boehmer and Ronda Carranza (No. 15-3204), and Peggy Waldon, James Charles Waldon, and Marilyn Smith (No. 15-3205), appeal three nearly identical district court orders granting summary judgment in favor of Defendant Grant Davis on legal malpractice claims. The district court ruled the claims were time barred. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

In 2002, Davis represented a number of individuals, including the Plaintiffs involved in this appeal, in over 300 personal-injury lawsuits filed in Missouri state court. The cases were brought against Robert Courtney, a pharmacist who admitted to diluting chemotherapy drugs, along with Eli Lilly and Company ("Eli Lilly") and Bristol-Myers Squibb Company ("Bristol-Myers"), who allegedly failed to prevent their drugs from being diluted. In October 2002, Davis negotiated a global settlement with Eli Lilly and Bristol-Myers. Each of the Plaintiffs signed two

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

documents in November 2002 to join in this settlement: a Disclosure of Global Settlement (the "Disclosure"), and a Release and Settlement Agreement (the "Settlement Agreement").[1]

The Disclosure stated that the global settlement included over 300 separate lawsuits, that Davis' law firm represented the majority of the plaintiffs in those lawsuits, and that Eli Lilly and Bristol-Myers were making a joint settlement offer to resolve all of the cases. It explained that the settlement was contingent on payment of all claims from one combined fund and on all of the plaintiffs releasing the drug companies from liability. The Disclosure also indicated, by reference to the attached Settlement Agreement, that a special master would determine at a later date the amount to be deposited in the combined fund and the amount each plaintiff would receive. By signing the Settlement Agreement, Plaintiffs acknowledged that they understood the settlement process and agreed to accept the settlement amount ultimately determined by the special master. Finally, the Disclosure stated that Eli Lilly and Bristol-Myers had offered a separate settlement for $1,450,000 to one plaintiff, Georgia Hayes, who would not be participating in the combined settlement fund. Special masters later evaluated all of the individual claims and, in 2003, a Missouri court approved individual settlement allocations to Plaintiffs.

---

[1] Davis represented Evelyn Wille in the underlying litigation; Virgil Wille is her surviving husband. Evelyn Wille signed the Disclosure and Settlement Agreement.

In 2003, the Tilzers, who were other clients of Davis included in the global settlement, moved in Missouri state court to void their Settlement Agreement. They argued it was an aggregate settlement agreement governed by Rule 4-1.8(g) of the Missouri Rules of Professional Conduct, and that Davis failed to make the disclosures required by that rule. The Missouri court denied the Tilzers' motion in January 2004. The Tilzers did not appeal; instead, they filed a legal malpractice suit against Davis in Kansas state court arguing he violated Rule 4-1.8(g). In April 2009, the Kansas Supreme Court ruled the Settlement Agreement was an aggregate settlement agreement and thus Davis was required to make disclosures under Rule 4-1.8(g). Tilzer v. Davis, Bethune & Jones, L.L.C., 204 P.3d 617, 628-29 (Kan. 2009).

All of the pleadings in the Tilzer case were filed under seal, and the Tilzers' attorney, William Skepnek, was barred from contacting any of Davis' other clients. That restriction was lifted in December 2009. Skepnek contacted the Boehmer Plaintiffs in December 2009, the Waldon Plaintiffs in July 2010, and Wille in 2011. The Boehmer and Waldon Plaintiffs filed their legal malpractice claims against Davis on June 15, 2011. Wille filed his claim against Davis on September 29, 2011. All Plaintiffs alleged that they lost settlement value in the underlying case because Davis failed to disclose his conflicts of interest, concealed the total settlement amount and the specific amounts awarded each client, and concealed the criteria and methodology used to determine the awards, as required by Rule 4-1.8(g).

Davis moved for summary judgment, arguing Plaintiffs' claims were time barred. The district court granted Davis' motion. It ruled that Plaintiffs were aware

4

of the facts necessary to support their claims in 2003 when they received their settlement awards, or at the very latest when the Tilzer decision issued. The court also rejected Plaintiffs' argument that Davis should be equitably estopped from asserting a statute-of-limitations defense. Plaintiffs now appeal.

## II

"We review the district court's grant of summary judgment de novo, applying the same standard as the district court." Jaramillo v. Adams Cty. Sch. Dist. 14, 680 F.3d 1267, 1268 (10th Cir. 2012). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

All parties agree that Kansas law controls the statute-of-limitations issue in this diversity case. The limitations period for a legal malpractice claim in Kansas is two years. Mashaney v. Bd. of Indigents' Def. Servs., 355 P.3d 667, 672 (Kan. 2015) (citing Kan. Stat. § 60-513(a)(4)).[2] "In general, a cause of action accrues, so as to start the running of the statute of limitations, as soon as the right to maintain a legal action arises." Pancake House, Inc. v. Redmond ex rel. Redmond, 716 P.2d 575, 579 (Kan. 1986). Kansas recognizes the "discovery rule," however, under which the

[2] Plaintiffs' complaints based their malpractice claims on negligence, fraud, and breach of fiduciary duty. Fraud and breach-of-fiduciary-duty claims have a two-year limitations period under Kan. Stat. § 60-513(a)(3), and tort claims have a two-year limitations period under § 60-513(a)(4). For the first time on appeal, Plaintiffs argue the district court failed to apply § 60-513(a)(3) to their fraud and breach-of-fiduciary-duty claims. We consider this argument forfeited. See Turner v. Pub. Serv. Co. of Colo., 563 F.3d 1136, 1143 (10th Cir. 2009) ("Absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal.").

limitations period does not begin to run "until the fact of injury becomes reasonably ascertainable to the injured party." Kan. Stat. § 60-513(b); see also Mashaney, 355 P.3d at 673. A legal malpractice claim accrues when the plaintiff reasonably ascertains that her injury is the result of the attorney's negligence. Dearborn Animal Clinic, P.A. v. Wilson, 806 P.2d 997, 1006 (Kan. 1991).

"Reasonably ascertainable does not mean actual knowledge." Davidson v. Denning, 914 P.2d 936, 948 (Kan. 1996) (quotations omitted). An injury is "reasonably ascertainable" under § 60-513(b) "when the plaintiff knew or could reasonably have been expected to know of the alleged negligence." Knight v. Myers, 748 P.2d 896, 901 (Kan. Ct. App. 1988). "The term 'reasonably ascertainable' carries with it an obligation to investigate available factual sources." Bi-State Dev. Co., Inc. v. Shafer, Kline & Warren, Inc., 990 P.2d 159, 162 (Kan. Ct. App. 1999).

Plaintiffs contend that they could not have discovered either their injury or that their injury was the result of Davis' malpractice until the Kansas Supreme Court's Tilzer decision was issued. They concede that the Tilzer decision itself is not a material fact, but argue the decision imparted knowledge of facts that were not previously known. But even assuming that Plaintiffs' malpractice claims against Davis were not reasonably ascertainable until the Tilzer decision, we agree with the district court that Plaintiffs' claims are nonetheless time barred because they were filed more than two years after Tilzer was issued on April 3, 2009.

Plaintiffs argue they are not expected to follow developments in case law and they could not have learned about the Tilzer decision until contacted by Skepnek.

6

But "Kansas courts charge parties with constructive notice of public records." Id. Any facts disclosed by the Tilzer case were a matter of public record as soon as the decision was issued by the Kansas Supreme Court. See Stephens v. Van Arsdale, 608 P.2d 972, 981 (Kan. 1980) (holding that court records are generally open public records).[3] "[T]he Kansas Supreme Court [has] held that a party charged with constructive notice cannot claim ignorance of public records in order to toll the statute of limitations." Bi-State, 990 P.2d at 162 (citing Travis v. Glick, 91 P.2d 41, 47 (Kan. 1939)). This rule applies to lawyers and laypersons alike. See id.; Knight, 748 P.2d at 901-02. The district court correctly ruled Plaintiffs were charged with constructive knowledge of Tilzer once it was issued on April 3, 2009, and thus their claims, filed more than two years later, are time barred.

Plaintiffs also argue that the district court erred in rejecting their argument that Davis should be equitably estopped from advancing a statute-of-limitations defense. They contend he opposed disclosure of his clients' names to Skepnek for several months after the Tilzer decision issued, which delayed them learning about the opinion.

Under Kansas law, a defendant can be estopped from asserting a statute-of-limitations defense if he induced the plaintiff to delay filing an action "either through affirmative acts or through silence concerning material facts when under affirmative

---

[3] Although the pretrial proceedings were sealed, it is undisputed that the Tilzer decision was issued by the Kansas Supreme Court and became available to the public on April 3, 2009.

duty to speak." City of Wichita v. U.S. Gypsum Co., 72 F.3d 1491, 1499-1500

(10th Cir. 1996). "There must be some actual artifice to prevent knowledge of the

fact, some affirmative act of concealment, or some misrepresentation to exclude

suspicion and prevent injury." Friends Univ. v. W.R. Grace & Co., 608 P.2d 936,

941 (Kan. 1980) (quotation omitted). "The question is whether there was a design to

prevent the discovery of the facts which gave rise to the action, and whether the act

operated as a means of concealment." Id. (quotation omitted).

Plaintiffs have not alleged that Davis engaged in artifice, misrepresentation, or

concealment of facts giving rise to their claims. Davis' opposition to the disclosure

of his clients' names to Skepnek did not involve any facts giving rise to Plaintiffs'

claims. Moreover, given that Plaintiffs are charged with constructive knowledge of

the Tilzer decision when it was issued, the date on which Skepnek contacted any of

the Plaintiffs is immaterial to the running of the limitations period. Id. ("There can

be no concealment which will prevent the running of the statute of limitations where

the cause of action is known to the plaintiff or there is a presumption of such

knowledge." (quotation omitted)).[4]

---

[4] Many of Plaintiffs' appellate arguments were raised for the first time on appeal, and therefore are forfeited, see Turner, 563 F.3d at 1143, including their argument that district court failed to accept the Tilzer decision as dispositive and their fraud and breach-of-fiduciary-duty arguments based on Great Plains Christian Radio, Inc. v. Central Tower, Inc., 399 F. Supp. 2d 1185 (D. Kan. 2005).

**III**

The motion to file appendices under seal is **GRANTED**. The district court's judgments are **AFFIRMED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge