**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 25, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SCOTT BOOTH; KATIE MICHELLE
BOOTH; COLTEN SCOTT BOOTH;
BRIAN CORY BOOTH,

      Plaintiffs - Appellants,

v.

GRANT DAVIS,

      Defendant - Appellee.

_____

DOROTHY SCHMITZ; JILL SCHMITZ-
NOBLE; BILL SCHMITZ; LADONNA
OLIPHANT; NEELEY SCHMITZ;
DAVID SCHMITZ,

      Plaintiffs - Appellants,

v.

GRANT DAVIS,

      Defendant - Appellee.

_____

KIMBERLY CARREL,

      Plaintiff - Appellant,

v.

GRANT DAVIS,

      Defendant - Appellee.

_____

No. 16-3153
(D.C. No. 5:10-CV-04010-KHV)
(D. Kan.)

No. 16-3167
(D.C. No. 5:10-CV-04011-KHV)
(D. Kan.)

No. 16-3156
(D.C. No. 5:10-CV-04124-KHV)
(D. Kan.)

PRUDENCE KIRKEGAARD,

     Plaintiff - Appellant,

v.

GRANT DAVIS,

     Defendant - Appellee.

No. 16-3168
(D.C. No. 5:10-CV-04125-KHV)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **LUCERO**, and **MURPHY**, Circuit Judges.
_____

In 2002 and 2003, defendant attorney Grant Davis represented several hundred individuals in lawsuits against two pharmaceutical companies. Some of those individuals now claim Davis committed legal malpractice by failing to disclose to them material information pertaining to a settlement agreement with the drug companies.[1] The district court dismissed their legal malpractice claims on the ground

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] This case involves four consolidated appeals by four sets of plaintiffs: members of the Booth family, members of the Schmitz family, Kimberly Carrel, and Prudence Kirkegaard. However, the facts giving rise to plaintiffs' legal malpractice claims, as well as the legal arguments asserted on appeal, are virtually identical. And with the exception of Carrel, the plaintiffs in these cases are the surviving family members of the individuals represented by Davis in the litigation against the

that they were time-barred under Kansas' two-year statute of limitations. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.[2]

**I**

The malpractice claims in this case arise out of the same underlying facts as the malpractice claims addressed in our prior decision, <u>Wille v. Davis</u>, 650 F. App'x 627 (10th Cir. 2016) (unpublished). In 2002 and 2003, Davis and his law firm represented numerous individuals in lawsuits against pharmacist Robert Courtney, a pharmacy, and two pharmaceutical companies—Eli Lilly & Company and Bristol-Myers Squibb Company—for the alleged dilution of chemotherapy drugs. In late 2002, the drug companies proposed a global settlement agreement intended to resolve all cases pending against them and to set aside money for future cases. The companies expressly reserved the right to opt out of the agreement if "fewer than all of the Covered Individuals accept[ed]" the proposed settlement. In addition, the settlement was contingent upon Georgia Hayes, who had filed the lead case against the drug companies, "complying with all the terms and conditions of" a separate agreement, under which the companies would pay her $2.9 million in exchange for the dismissal of her claims.

---

pharmaceutical companies. For clarity, we will generally refer to plaintiffs collectively.

[2] This case is in federal court by way of diversity jurisdiction under 28 U.S.C. § 1332. At the time the complaints were filed, Davis was a resident of Kansas, plaintiffs were residents of Missouri and Ohio, and the amount in controversy exceeded $75,000.

Davis informed plaintiffs of the proposal and provided them with a "Disclosure of Global Settlement." That disclosure stated that Davis' law firm represented most of the individuals who had filed lawsuits against the drug companies, that Eli Lilly and Bristol-Myers Squibb had made a joint settlement offer to resolve all of those lawsuits, and that the companies had each offered Hayes a separate settlement of $1.45 million. By signing the disclosure, plaintiffs represented that they had reviewed the terms of the settlement agreement and understood that their right to receive funds would be determined by a Special Master. They also signed a "Release and Settlement Agreement" acknowledging "that they underst[ood] the process by which settlement amounts [would] be determined."

On May 20, 2003, the Special Masters determined plaintiffs' settlement awards. Connie Booth and Kimberly Carrel signed a Settlement Sheet acknowledging receipt of their awards on June 24, 2003; Prudence Kirkegaard and Dorothy Schmitz, on July 10, 2003. All awards were substantially lower than what Hayes had received from the drug companies.

In April 2004, another family who had participated in the global settlement— the Tilzers—filed a legal malpractice suit against Davis in Kansas state court. See Tilzer v. Davis, Bethune & Jones, L.L.C., 204 P.3d 617, 621 (Kan. 2009). On appeal, the Kansas Supreme Court held that the global settlement constituted an "aggregate settlement" under Missouri Rule of Professional Conduct 4-1.8(g), requiring Davis to disclose to his clients "the existence and nature of all of the claims and of the participation of each person in the settlement" in order to obtain informed

4

consent. Tilzer, 204 P.3d at 627-28. It further concluded that the settlement ran "afoul of the ABA guidelines" because damage awards were not negotiated on behalf of individual plaintiffs and the structure of the settlement made it impossible for Davis to make the required disclosures. Id. at 629. The Kansas Supreme Court decision was filed on April 3, 2009. However, the proceedings were subject to a protective order, which prevented the Tilzers' attorney from contacting Davis' other clients, including plaintiffs, until December 2009. The Booth and Schmitz families learned of the Tilzer opinion in December 2009; Carrel and Kirkegaard, in June 2010.

On February 3, 2010, nearly seven years after the global settlement with the drug companies, the Booths and the Schmitz's filed lawsuits against Davis, alleging legal malpractice based on his failure to disclose material information pertaining to the settlement agreement, including the existence of actual and potential conflicts of interest. Carrel and Kirkegaard filed similar actions on September 29, 2010. The district court granted summary judgment in favor of Davis in all four cases, concluding that plaintiffs' claims were time-barred under Kansas' two-year statute of limitations. Plaintiffs timely appealed.

**II**

We review a grant of summary judgment de novo, applying the same standard as the district court. Duvall v. Georgia-Pacific Consumer Prods., L.P., 607 F.3d 1255, 1259 (10th Cir. 2010). Summary judgment is appropriate if "there is no

5

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The parties agree that plaintiffs' legal malpractice claims are governed by Kan. Stat. § 60-513(a)(4), which prescribes a two-year limitations period for tort actions. Under Kansas law, a claim accrues when "the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act," when "the fact of injury becomes reasonably ascertainable to the injured party." § 60-513(b). This latter rule "postpones the running of the limitations period until the time the plaintiff is able to determine that her injury may be caused by some act of the defendant." Benne v. Int'l Bus. Mach. Corp., 87 F.3d 419, 427 (10th Cir. 1996); see also Dearborn Animal Clinic, P.A. v. Wilson, 806 P.2d 997, 1006 (Kan. 1991) (stating that limitations period did not begin to run until it was "reasonably ascertainable that the injury was caused by the attorney's malpractice"). "Reasonably ascertainable does not mean actual knowledge." Davidson v. Denning, 914 P.2d 936, 948 (Kan. 1996) (quotations omitted). The standard "carries with it an obligation to investigate available factual sources," Bi-State Dev. Co. v. Shafter, Kline & Warren, Inc., 990 P.2d 159, 162 (Kan. Ct. App. 1999), and is met if "the plaintiff knew or could reasonably have been expected to know of the alleged negligence," Knight v. Myers, 748 P.2d 896, 901 (Kan. Ct. App. 1988).

Plaintiffs argue that they could not have discovered their legal malpractice claims prior to the issuance of the Tilzer decision on April 3, 2009, and thus their

6

lawsuits are timely because they were filed within two years of that date. They appear to argue that their claims could not have accrued until they had an understanding of their legal rights and Davis' professional obligations as their attorney. But as we have previously stated, "no plaintiff ever knows prior to her suit whether the defendant is negligent" because that is a question "to be resolved by a jury." Benne, 87 F.3d at 427. Instead, a claim accrues when the plaintiff "discovers, or reasonably should have discovered, the material facts essential to his cause of action." Pancake House, Inc. v. Redmond ex rel. Redmond, 716 P.2d 575, 579 (Kan. 1986) (emphasis added).

This standard was satisfied in 2003 when plaintiffs received their settlement awards. By that time, they had signed the Disclosure of Global Settlement and the Release and Settlement Agreement, and thus knew that: (1) they had entered into a joint settlement agreement covering all cases pending against the drug companies; (2) Davis and his law firm represented a majority of the individuals who had filed lawsuits against those companies; (3) they were receiving significantly less than Hayes, who had filed the lead case; and (4) Davis had not disclosed the settlement awards of the remaining plaintiffs (nor could he have, given that those awards had yet to be determined by a Special Master).

Moreover, several of the plaintiffs acknowledge their belief, in 2003, that they had been treated improperly and/or that Davis had not disclosed all information material to the settlement agreement. For example, Carrel told an attorney at Davis' firm that she had been treated unfairly and that the settlement money should have

7

been divided evenly. Similarly, Neeley Schmitz spoke to Davis about the family's settlement award because "it just didn't seem fair," and the family was not "given enough information to know if they were being treated equally or fairly." And Jill Schmitz-Noble testified that she did not think her attorneys were "coming clean" with her because they did not provide information about the other participants in the settlement or the process by which the awards would be determined. This evidence demonstrates that both the fact of injury and its causal connection to Davis' conduct were reasonably ascertainable in 2003.

Plaintiffs seek to bolster their argument with our statement in Wille that "[a] legal malpractice claim accrues [under Kansas law] when the Plaintiff reasonably ascertains that her injury is the result of the attorney's negligence." 650 F. App'x at 630. But this statement was intended to clarify that the limitations period begins to run only when a plaintiff knows or reasonably should know that her injury is attributable to the attorney's conduct. It was not meant to suggest that the plaintiff must also come to the legal conclusion that the attorney's conduct was negligent. See Benne, 87 F.3d at 427 (rejecting the argument that Kansas law permits a plaintiff who is "fully aware of the cause of her injury" to delay until "the plaintiff develops the thought that the defendant may have been negligent"); Davidson, 914 P.2d at 947 (rejecting argument that action did not accrue until plaintiff "connect[ed]" defendant's conduct and death, because "[a]ll the information that [he] needed to make that connection was available as of the date of death").

There is no better support for our determination that plaintiffs' claims accrued when they received their settlement awards than the fact that the Tilzers, who were otherwise similarly situated to plaintiffs with respect to the underlying settlement agreement, brought suit against Davis for legal malpractice in 2004. Plaintiffs contend that the Tilzer family was in a unique position because a member of the family was a lawyer who had been involved in the litigation against the drug companies. Yet plaintiffs do not specify what facts, as opposed to legal conclusions, the Tilzers were able to obtain from this family member that would have been unavailable to other participants in the settlement. Their argument can again be reduced to the claim that they could not have brought suit in 2003 because they did not have the legal expertise to know that Davis' conduct constituted malpractice. But every lay plaintiff lacks legal expertise—they nevertheless are charged with investigating their claims within the limitations period. See Benne, 87 F.3d at 427 ("The plaintiff must take the initiative within the limitations period to set out to prove defendant's negligence.").[3]

---

[3] Similarly, plaintiffs argue that the Tilzer decision apprised them of "facts" necessary to their cause of action: that the global settlement was an aggregate settlement, that Davis had an obligation to make certain disclosures, and that Davis had breached his obligation. But, as with the determination that Davis' conduct constituted malpractice, these "facts" are actually legal conclusions and are thus irrelevant to the question of when plaintiffs' claims accrued.

We are sympathetic to plaintiffs' argument that they were entitled to trust Davis as their attorney and proceed on the assumption that he was acting in their best interests. However, to reach the outcome plaintiffs seek in this case, we would have to conclude that a special standard for claim accrual applies to legal malpractice actions. The Kansas Supreme Court has held that the general rules set forth in § 60-513(a)(4) and (b) apply to legal malpractice claims. See Dearborn Animal

9

## III

For the foregoing reasons, the district court's orders granting summary judgment in favor of Davis are **AFFIRMED**.

                                        Entered for the Court


                                        Carlos F. Lucero
                                        Circuit Judge

---

Clinic, 806 P.2d at 1001-02.  And we are not permitted to disregard state court interpretations of state law.  See King v. Order of United Commercial Travelers of Am., 333 U.S. 153, 157-58 (1948).  Plaintiffs' theory that the limitations period is tolled indefinitely unless another attorney is consulted would effectively eliminate any statute of limitations for legal malpractice claims under Kansas law, a result plainly inconsistent with state court precedent.