v.

**ELI LILLY & COMPANY and Bristol–Myers Squibb Company, Respondents.**

**No. WD 75942.**

Missouri Court of Appeals, Western District.

Aug. 13, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 2013.

Application for Transfer Denied Nov. 26, 2013.

Arthur Benson, II, Jamie Lansford, Kansas City, MO, William Ohlemeyer, New York, NY, for Appellants.

Marie Woodbury, Lori McGroder, Jennifer Stevenson, Kansas City, MO, for Respondents.

Before Division Four: JAMES EDWARD WELSH, C.J., VICTOR C. HOWARD, J., and PEGGY STEVENS McGRAW, Sp. J.

JAMES EDWARD WELSH, Chief Judge.

In 2002 and 2003, the appellants in this case, along with numerous other claimants,[1] entered into a confidential settle-

---

1. More than 400 personal injury and wrongful death plaintiffs entered into the settlement agreement with the pharmaceutical companies. The motion to vacate at issue in this

ment agreement with Eli Lilly & Company and Bristol–Myers Squibb Company (the pharmaceutical companies) to settle all pending and future claims pertaining to the pharmaceutical companies' alleged negligence in enabling pharmacist Robert Courtney to dilute chemotherapy drugs. In signing the release and settlement agreement, the appellants agreed to fully release and discharge the pharmaceutical companies from all claims arising out of Courtney's dilution scheme and agreed to accept a settlement amount to be determined by Special Masters appointed by the Circuit Court of Jackson County. Under the terms of the release, all matters related to the settlement were to be kept strictly confidential. Pursuant to the agreement, the circuit court appointed Special Masters to analyze the individual claim forms submitted by all the claimants, including appellants. Thereafter, the Special Masters submitted proposed individual damage assessments to the circuit court. Every claimant had an opportunity to file objections to the proposed damage assessments, and some claimants did file such objections. The circuit court then approved all the Special Masters' recommendations regarding the allocation of the settlement funds to each claimant, and the settlement funds were distributed to the claimants in accordance with the Special Masters' recommendations. All the claimants voluntarily dismissed with prejudice their claims against the pharmaceutical companies.[2]

▌ In February 2012, the appellants filed with the Jackson County Circuit Court a "Motion to Reopen Case, Void the Settlement and Releases, and Vacate Orders Affirming Awards of Special Master."

With the motion to vacate, the appellants also filed a "Motion to Unseal," seeking an order unsealing the pleadings and exhibits, which included records involving the Courtney settlement agreement. The circuit court denied both of the motions, and the appellants now appeal those determinations to this court.

On appeal, the appellants assert that the circuit court erred in denying their motion to void the settlement agreement and vacate the circuit court's orders affirming the award of the Special Master for three reasons. First, they contend that the circuit court erred in relying on the reasonableness of the settlement as a basis to deny the motion. Second, they claim that the circuit court acted in a manner inconsistent with due process in supervising and implementing the settlement process. Third, they allege that the circuit court erred in holding that their case should fail under the basic doctrine of waiver. In regard to the circuit court's denial of their motion to unseal, the appellants claim that the circuit court failed to recognize or apply the presumption of open access to judicial records and failed to articulate any legally sufficient reason for sealing judicial records. Further they contend that, even if the circuit court articulated a legally sufficient reason for sealing the records, the circuit court abused its discretion in sealing the records because the reasons cited by the pharmaceutical companies for sealing the records are insufficient as a matter of law.

In handling this appeal, this court issued a bifurcated briefing and argument schedule. We ordered the parties to brief and argue the issue of whether the circuit

case was filed by 20 of these plaintiffs or their representatives, who we refer to collectively as "appellants."

2. Appellants claim that there is no record of dismissal of the pharmaceutical companies in Kathyrn Calohan's case. *See* note 8 *infra* for a discussion of this case.

court erred in denying the appellants' motion to unseal first. After oral arguments on that issue, this court informed the parties that it would take the issue regarding the motion to unseal with the case. This court then ordered a briefing and argument schedule for the remaining issues on appeal as to whether the settlement agreement was void. Having received all the briefs and having heard arguments on all the issues, this court is now prepared to enter its decision. We affirm the circuit court's decisions denying the appellants' "Motion to Reopen Case, Void the Settlement and Releases, and Vacate Orders Affirming Awards of Special Master" and denying the appellants' motion to unseal.

The procedural posture of this case is unique. Appellants filed a motion with the circuit court seeking to void a settlement agreement that they entered into with the pharmaceutical companies over ten years ago. In so moving, they asserted that their attorneys, who represented them during the settlement agreement, allegedly violated Rule 4–1.8(g) [3] of the Missouri Rules of Professional Conduct regarding aggregate settlements. Because of the alleged violation of Rule 4–1.8(g), the appellants claimed that the settlement agreement was void because it was against Missouri law and because it violated their rights to due process.[4]

3. The Missouri Supreme Court adopted this rule in 1985 and amended it in 2007. The pre–2007 version of the Rule did not include the provision that the informed consent must be "in writing signed by the client." The revision does not impact the issues in this case.

4. Rule 4–1.8(g) states that "[a] lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients ... unless each client gives informed consent, in a writing signed by the client. The lawyer's disclosure shall include the existence and nature of all the claims ... and of the participation of each person in the settlement." We recognize that the Kansas Supreme Court in a malpractice action against one of the attorneys involved with the settlement in this case found that "the unavailability of the information required to by disclosed by Rule 4–1.8(g) simply corroborated that [the settlement agreement in this case] was an aggregate settlement and rendered it impossible for [the attorney] to obtain [his client's] informed consent under [Rule 4–1.8(g)]." *Tilzer v. Davis, Bethune & Jones, LLC*, 288 Kan. 477, 204 P.3d 617, 629 (2009), *cert. denied*, 558 U.S. 992, 130 S.Ct. 507, 175 L.Ed.2d 349 (2009). We question, however, how an attorney can violate Rule 4–1.8(g) when he or she discloses all aspects of the settlement that were known at the time that the clients agreed to participate in the settlement. Indeed, an attorney is obligated to "abide by a client's decision whether to accept an offer of settlement of a

matter." Rule 4–1.2(a). In this case, the attorneys would have had to convey the settlement offer to their clients but then basically would have had to tell their clients: "Although you may be interested in taking advantage of the settlement offer, you can't because I don't know the exact amount all my clients may receive under the settlement agreement." If the client demanded that the attorney accept the settlement agreement and the attorney refused, then the attorney would violate Rule 4–1.2(a). Surely, Rule 4–1.8(g) is meant to protect clients from situations when an attorney, who represents two or more clients in an aggregate settlement, fails to disclose information *known* to him or her about the existence and nature of all the claims and of the participation of his clients in the settlement. Moreover, aggregate settlements are permitted under Missouri law. Indeed, even Rule 4–1.8(g) does not prohibit aggregate settlements. Rule 4–1.8(g) merely is an ethical rule prohibiting an attorney, who represents two or more clients, from participating in the making of an aggregate settlement of the clients' claims unless each client gives informed consent. If we were to invalidate the settlement agreement as void because it violated due process, the settlement agreement would be void only as to those claimants, who were represented by an attorney who represented two or more claimants in the settlement agreement. It would not be void against claimants whose attorneys represented only one client and whose client accepted the settlement agreement, and it would

 In moving to vacate the circuit court's orders affirming the awards of the Special Master, the appellants invoked Rule 74.06(b)(4). Pursuant to Rule 74.06(b)(4), a court may relieve a party from a final judgment or order if "the judgment is void."[5] A Rule 74.06(b)(4) motion is not subject to any specific time limit but must be made "within a reasonable time." Rule 74.06(c).

 The starting point, however, for application of Rule 74.06(b)(4) is a judgment.

By its plain terms, Rule 74.06(b)(4) provides relief from a "judgment" only.[6] "A judgment is entered when a writing signed by the judge and denominated 'judgment' or 'decree' is filed." Rule 74.01(a). "The requirement that a trial court must 'denominate' its final ruling as a 'judgment' is not a mere formality. It establishes a 'bright line' test as to when a writing is a judgment." *City of St. Louis v. Hughes*, 950 S.W.2d 850, 853 (Mo. banc 1997). In the record, we find no writing, denom-

---

not be void as to any settling *pro se* litigant. Even the Kansas Supreme Court recognized, "Rule 4–1.8(g) is a rule of professional conduct defining an unethical conflict of interest for an attorney representing two or more clients in a particular action. It is not a statutory provision governing the validity of settlement agreements, *i.e.* rendering aggregate settlements unlawful as a matter of law." *Id.* at 627. The Kansas court further noted that "if all of the plaintiffs in the Missouri lawsuit had been represented by separate counsel, Rule 4–1.8(g) would not have applied, regardless of the terms of the settlement." *Id.*

5. Appellants also claimed in their motion that the circuit court's orders affirming the awards of the Special Master could be set aside under Rule 74.06(b)(5) and Rule 74.06(d). Rule 74.06(b)(5) allows the court to relieve a party from a final judgment if "the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment remain in force." Rule 74.06(d) allows the court "to entertain an independent action to relieve a party from a judgment or order or to set aside a judgment for fraud upon the court." Appellants on appeal have not asserted that the circuit court's orders affirming the awards of the Special Master should be set aside on the basis of Rule 74.06(b)(5) or Rule 74.06(d). " '[A] question not presented in an appellant's brief will be considered abandoned on appeal and no longer an issue in the case.' " *Lewis v. Fort Zumwalt Sch. Dist.*, 260 S.W.3d 888, 890 (Mo.App.2008) (citation omitted). Although appellants in their reply brief contend that they never limited their argument on appeal to just Rule 74.06(b)(4),

we find no discussion of Rule 74.06(b)(5) or 74.06(d) in appellants' initial brief. "[W]e do not review an assignment of error made for the first time in the reply brief." *Arch Ins. Co. v. Progressive Cas. Ins. Co.*, 294 S.W.3d 520, 524, n. 5 (Mo.App.2009) (internal quotation marks and citation omitted).

6. Appellants rely on two cases in support of their contention that this court may review a "voidness" challenge under Rule 74.06(b)(4) to a trial court's "order" rather than a judgment. Neither of those cases, however, address specifically whether Rule 74.06(b)(4) can be used to set aside a void order and are, therefore, not persuasive. In the first case, *In the Interest of C.J.G.*, 219 S.W.3d 244, 246 (Mo. banc 2007), a father filed a motion to set aside the judgment under Rule 74.06, arguing that the circuit court's "order of disposition," which found that father was negligent in the supervision of his child, was void. Without any discussion about whether an "order" may be set aside under Rule 74.06(b)(4), the Missouri Supreme Court found that father waived any objections based upon lack of personal jurisdiction and that father's challenge alleging that the "order of disposition" was void was not brought within "a reasonable time" under Rule 74.06. *Id.* at 249. In the second case, *Magee v. Blue Ridge Prof. Bldg. Co.*, 821 S.W.2d 839, 842 (Mo. banc 1991), the Supreme Court found that the circuit court's order of dismissal for failure to state a cause of action against one defendant became a final appealable judgment when the personal injury plaintiff voluntarily dismissed her action as to the remaining defendants without prejudice. The *Magee* court did not discuss whether an "order" may be set aside under Rule 74.06(b)(4).

inated "judgment" or "decree," signed by the judge, and the appellants point us to no such document or docket entry.[7] Rather than a judgment, the appellants are essentially seeking to set aside a contract based upon a private settlement between the parties. A mechanism exists that allows a party to challenge the validity of a contract—namely, an independent action for rescission. A motion under Rule 74.06(b)(4), which provides relief from void judgments, is simply not the appropriate mechanism to set aside the settlement agreement. Because there is no judgment to set aside, we find that the circuit court did not err in denying the appellants' motion to vacate the circuit court's orders affirming the awards of the Special Master under Rule 74.06(b)(4).

▮▮▮ Indeed, there was no judgment entered in appellants' cases because all[8] of the appellants voluntarily dismissed with prejudice their cases against the pharmaceutical companies. "A voluntary dismissal is effective on the date it is filed with the court." *State ex rel. Frets v. Moore*, 291 S.W.3d 805, 812 (Mo.App.2009) (citations omitted). Once a party voluntarily dismisses a case, " 'it is as if the suit were never brought.' " *Id.* (citation omitted).

---

7. Appellants point to four orders by the circuit court and argue that these orders, taken collectively, should be treated as a judgment. None of these orders, however, meet the requirements of Rule 74.01. In their reply brief, Appellants note that, in the wrongful death cases involved in this case, the circuit court entered judgments entitled "Judgment and Order of Approval of the Proposed Allocation of Wrongful Death Settlement." Appellants seemingly suggest that, because in their motion to vacate they moved to vacate "any orders or judgments of record that pose a procedural obstacle to re-opening this case," their Rule 74.06 motion challenged these wrongful death judgments as well, and we, therefore, can use these judgments to set aside the settlement agreement as void under Rule 74.06. In the appellants' motion to vacate before the circuit court, however, the appellants asked the circuit court "to vacate prior court orders affirming the awards of the special master pertaining to these Plaintiffs," void the Plaintiff's releases, and allow them to reinstate their claims against the pharmaceutical companies. In a footnote in their motion to vacate, the appellants noted that "the relevant orders" to be vacated were: "(1) Order acknowledging [settlement agreement] and appointing Special Master (Dec. 27, 2002); (2) Order approving the distribution of Tier 2 (May 27, 2003); (3) Order approv[ing] the distribution of Tier 3 (Sept. 12, 2003); and ... [ (4) O]rders overruling various Plaintiffs' objections to the settlement allocations[.]" Appellants did not mention the wrongful death judgments in its list of "relevant orders." The same is true in regard to a judgment entered by the circuit court in the case by one of the claimants, Jerome Tilzer. In regard to that case, the pharmaceutical companies filed a motion to enforce the settlement, and the Tilzer family's attorney filed a separate motion to enforce attorney's lien. The Tilzers hired a new attorney, and, at the hearings and in response to the motions, the Tilzers argued that the settlement agreement violated Rule 4–1.8(g) and was void as against public policy. The circuit court granted the motion to enforce the settlement, ordered the dismissal of the Tilzer claims against the pharmaceutical companies, and granted the motion for attorneys fees. The circuit court expressly ruled that the Tilzers' attorneys did not violate Rule 4–1.8(g) and that the settlement should not be set aside. The circuit court incorporated all of this into a writing denominated a judgment, but the Tilzers did not appeal from that judgment. Moreover, the wrongful death judgments and the Tilzer judgment would not serve as a basis to set aside the settlement as to all the appellants.

8. Appellants claim that the record does not establish that all claimants voluntarily dismissed their claims against the pharmaceutical companies. Appellants state that "[t]here appears to be no record of dismissals of [the pharmaceutical companies] in Kathyrn Calohan's case". Even if a claimant did not voluntarily dismiss his or her case as the settlement agreement required, the claimant could not overcome the hurdle that there was no judgment entered in this case that could be set aside pursuant to Rule 74.06.

"'The circuit court may take no further steps as to the dismissed action, and any step attempted is viewed a nullity.'" *Id.* (citation omitted). Therefore, once the appellants voluntarily dismissed their cases, there was nothing more the circuit court could do in these cases.[9]

Thus, to the extent that the appellants sought a declaration from the circuit court within their dismissed cases that the settlement agreement that they entered into with the pharmaceutical companies was void because it was against Missouri Law and because it violated their rights to due process, the circuit court could take no further steps within these dismissed actions. The circuit court, therefore, did not err in denying the appellants' "Motion to Reopen Case, Void the Settlement and Releases, and Vacate Orders Affirming Awards of Special Master."

■■■ The appellants also assert that the circuit court erred in denying their motion to unseal. In essence, the appellants are challenging the circuit court's decision to maintain the confidentiality of all matters related to the settlement agreement. In particular, the appellants complain that the circuit court failed to recognize or apply the presumption of open access to judicial records and failed to articulate any legally sufficient reason for sealing judicial record. Further, they contend that, even if the circuit court articulated a legally sufficient reason for sealing the records, the circuit court abused its discretion in sealing the records because the reasons cited by the pharmaceutical ·companies for sealing the records are insufficient as a matter of law.

■■■ Given that we find that the circuit court did not err in denying the appellants' motion to set· aside the settlement agreement, the provision in the settlement agreement, where the appellants agreed to keep all matters related to the settlement "strictly confidential," remains valid and enforceable. By signing the settlement agreement, the appellants agreed that all matters related to the settlement were to be kept confidential. The appellants, along with the pharmaceutical companies, therefore, essentially asked the circuit court to seal the record and' everyone proceeded with the matter with the record under seal.[10] Hence, any error committed by the circuit court in sealing the record was invited by the parties' agreement to settle. Under the invited error rule, "a party is estopped from complaining of an error of his own creation and committed at his request." *Sprague v. Sea,* 152 Mo. 327, 53 S.W. 1074, 1078 (Mo.1899). "It is axiomatic that a 'party cannot lead a trial court into error and then . . .' lodge a complaint about the action." *In the Matter of the*

9. In determining whether a dismissal is voluntary, Missouri courts consider whether the individual filing the dismissal was authorized to do so. *Elam v. Dawson,* 216 S.W.3d 251, 256 (Mo.App.2007). In their. initial brief on appeal, Appellants did not assert that the dismissals were defective because their attorneys lacked the authority to enter the voluntary dismissals. Instead, they merely complained that they were not adequately informed by their attorneys about all the terms of the settlement agreement and, therefore, the settlement agreement should be declared void. Such complaints do not establish that their attorneys lacked the authority to file the voluntary dismissals on their behalf. In their reply brief, however, appellants assert that the attorneys lacked authority to file the voluntary dismissals. As noted previously *supra* at n: 5, "[W]e do not review an assignment of error made for the first time in the reply brief." *Arch Ins. Co.,* 294 S.W.3d at 524, n. 5 (internal quotation marks and citation omitted).

10. There is some dispute as to what the circuit court has actually sealed in this case. For the purpose of this appeal, it is not necessary to determine which documents were filed under seal.

*Care and Treatment of Berg*, 342 S.W.3d 374, 384 (Mo.App.2011) (quoting *Schluemer v. Elrod*, 916 S.W.2d 371, 378 (Mo.App. 1996)). Thus, even if it were error for the circuit court to seal the records, which we need not decide,[11] the appellants may not rely on invited error on appeal. The circuit court, therefore, did not err in refusing to unseal the record in the motion to vacate proceeding.

All concur.

---

11. We note that, in *In re Transit Cas. Co.*, 43 S.W.3d 293, 302 (Mo. banc 2001), the Missouri Supreme Court provided a "nonexclusive list" of "sensitive information" that would justify closing public records. The "nonexclusive list would include trade or business secrets, *settlements of contested competing claims*, defamatory or scandalous material, private psychiatric, medical or academic records of non-parties or other privileged communications." *Id.* (emphasis added).